| 90 | 135 |
| 97 | 177 |
| 90 | 135 |
| 113 | 598 |
| 90 | 135 |
| 155 | 3195 |

STEPHEN H. CLINK v. CHARLES L. GUNN.

*Trover—Evidence—Trial—Cross-examination.*

1. The files in a chancery suit, resulting in a decree declaring a deed executed by the complainant to one of the defendants to have been a mortgage, and decreeing a reconveyance by the other defendant, who had purchased the land with notice of the complainant's rights, are admissible as evidence, in a suit

brought by the complainant against such purchaser to recover the value of wood cut by him from timber on said land, to establish plaintiff's title to the timber.

2. Evidence of the cost per thousand of removing saw-logs from a mill-pond to a mill, and sawing them into lumber, and of the best offer the defendant had been able to get for the lumber, as tending to show the value of the logs in the pond, is inadmissible in an action to recover the value of the logs, which had been wrongfully taken by the defendant.

3. The ill-will of a witness towards a party to the suit may be shown on his cross-examination; but counsel have no right to charge him with perjury, and with an attempt to swindle their client in another transaction.[1]

Error to Muskegon. (Dickerman, J.) Argued January 12, 1892. Decided February 5, 1892.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*Bunker & Carpenter,* for appellant.

*Stephen H. Clink,* in *pro per.*

LONG, J. May 14, 1889, plaintiff was the owner of 320 acres of land on section 12, Fruitport township, Muskegon county, upon which one John Williams held a mortgage of $1,500. On that day plaintiff gave Williams a deed of the premises, and took back from him an agreement to reconvey upon the payment of that sum with interest. January 25, 1890, Williams conveyed the premises to Charles L. Gunn, the defendant, for the pretended consideration of $1,922.64. These deeds were duly recorded. Subsequently the plaintiff tendered the amount, with the interest, and filed a bill to compel a reconveyance of the premises to him, making John Williams and Charles L. Gunn parties defendant, claiming that the deed and defeasance constituted a mortgage. The defendants appeared. Williams claimed that

---

[1] See *People v. Cahoon,* 88 Mich. 457.

the deed was intended as an absolute conveyance, and Gunn claimed to be a *bona fide* purchaser. The case was heard in the Muskegon circuit court, in chancery, and a decree entered in that court, compelling a reconveyance. No appeal was taken from this decree. After the deed was made to Williams, and on November 19, 1889, the plaintiff made a sale in writing to one Minnie Hefron of all the saw-logs then cut on the land deeded to Williams, and,—

"Also all the logs that may be cut out of any timber cut by Van Camp for hoop timber."

This contract of sale was assigned December 10, 1889, to Williams, and subsequently assigned by him to Gunn. At the time of the conveyance the plaintiff was the owner of 22 acres of land, upon which was a mill-pond, next adjoining to the 320 acres deeded to Williams. In this mill-pond was a quantity of saw-logs. The defendant, after the conveyance to him from Williams and the assignment to him of the Hefron contract of the sale of this timber, entered upon the 320-acre tract of land, and cut and carried away about 182½ cords of wood, and took from the mill-pond adjoining the land about 60,000 feet of the saw-logs. This is an action of trover for the value of the wood and saw-logs so taken. The case was tried in the Muskegon circuit court, before a jury, and the plaintiff had verdict and judgment. Defendant brings error.

On the trial the defendant claimed that he acted in good faith, and in the belief that the bill of sale covered the logs in the pond. He called Mr. Williams as a witness, who testified that the plaintiff told him when he took the assignment of the contract from Mrs. Hefron that the logs in the pond were covered by the bill of sale. This was denied by the plaintiff. This fact was submitted to the jury, who found the fact in favor of

the plaintiff. There was also a controversy on the trial
as to the amount and quality of the logs taken; but these
questions were all fairly submitted . to the jury, and
determined in favor of the plaintiff.

The first question raised upon this record relates to the
ruling of. the court in permitting the plaintiff to intro-
duce in evidence the files in the chancery suit, under the
objections of defendant's counsel. It is claimed that the
introduction of these proceedings prejudiced the defend-
ant's case before the jury; that the logs in the pond
were not involved in the chancery suit; and that the title
to the timber cut into wood passed to the defendant
through the Hefron contract, if he got any title to it.
There was no error in permitting the files and proceed-
ings in the chancery case to be put in evidence. The
title of the plaintiff to the wood in question was derived
through these proceedings; that is, the deed to Williams.
from plaintiff was absolute in form to convey the title,
but under the decree in the chancery suit this deed was.
declared a mortgage, which gave to Williams no right of
entry upon the lands, and therefore the defendant.
acquired no greater right, as he was held not to be a.
*bona fide* purchaser. He had no right of entry upon the
land, as the court in chancery construed these agreements,.
and when he entered, and took off the timber, and cut.
it into wood, and converted it, he was a trespasser. The
plaintiff had a right to show these facts through the
chancery proceedings. It is not claimed that the bill of
sale, upon its face, conveyed the right to take the logs,
but that the plaintiff told Williams it did convey them,.
which fact the jury, upon a fair submission of the ques-
tion, found against the defendant.

It is also claimed that the plaintiff could not recover,
because no demand was made before the bringing of the

suit. No demand was necessary, as the defendant was a trespasser in entering upon the land and taking the wood, as well as in taking the logs from the pond.

It is contended that the court below was in error in the admission of testimony offered by the plaintiff to show the quantity of the logs taken from the mill-pond; that the quantity fixed by the plaintiff was a mere guess, while the defendant's testimony showed the quantity to a certainty, and also showed that the logs were comparatively worthless. It is also claimed that the court was in error in ruling out certain of defendant's testimony offered to show the quantity and quality of the logs. The plaintiff's testimony showed that he went to the mill-pond, and made a careful estimate of the logs, which was from 50,000 to 60,000 feet. He also testified to their value. The defendant sought to show what it cost per thousand to get the logs from the pond to the mill, the cost of sawing, and the best offer he had been able to get for the lumber, as tending to show the value of the logs in the pond. This the court excluded, but advised defendant's counsel that he had a right to show the fair market value of the logs in the pond; and the counsel thereafter did introduce testimony tending to show such value. There was no error in this ruling. What it cost to get the logs from the pond to the mill, and to saw them, and what he had been offered, may have been a very unfair way of estimating the value of the logs. The defendant was a trespasser in entering upon plaintiff's land and taking the logs, and the plaintiff was entitled to recover their value while in the pond. The defendant was not precluded from showing what their value was there. The defendant was not precluded from showing their quality, and all these questions were fairly submitted to the jury.

One other question is raised. The defendant called

John Williams as a witness, and the plaintiff's counsel was permitted on cross-examination to go at great length into the business dealings between him and the plaintiff. The plaintiff is an attorney at law, and for many years attended to the law business of Williams.     Their difficulties seem to have grown up after the time of making the deed to these lands.   The plaintiff claimed that he had a right to go into this for the purpose of showing the feeling of the witness towards him.   It will be remembered that the outcome of the defendant's case rested almost wholly, so far as the logs were concerned, upon the testimony of Williams, who testified that plaintiff stated to him, when he purchased the Hefron contract, that it covered these logs.   This was denied by the plaintiff, and the court, in his direction to the jury, told them that, if they found that the plaintiff did tell Williams that, he would be estopped from asserting a right to the logs.   The plaintiff had a right, upon the cross-examination of Mr. Williams, to lay before the jury the ill-feeling which Williams had towards him, but the court permitted the plaintiff to go beyond all reasonable rules of cross-examination with the witness.   It was an attempt to break the force of Williams' testimony, and to prejudice the jury against him.   Mr. Clink, the plaintiff, conducted this cross-examination.   The following shows the manner of cross-examination which was resorted to:

"*Q.* Now, you say, Williams, that I went down and told you before you bought those logs from Hefron that they included those in the pond?

"*A.* Yes.

"*Q.* And there was about five or six thousand of them?

"*A.* Yes, sir.

"*Q.* You know that ain't true, don't you?

"*A.* I know that it is true.

"*Q.* You know it is true?

"*A*. Yes, sir.

"*Q*. It is just as true as what you swore to when you were trying to swindle me out of that land, ain't it?"

This was objected to, but the court did not interfere to protect the witness from these insults. Witnesses have a right to be protected from such attacks, and it was the duty of the court to have prevented Mr. Clink from making any further insinuations of this character, and Mr. Clink's conduct was deserving of the severest reprimand.

Mr. Williams was called as a witness, and was compelled to attend and testify. The plaintiff had a right to show the ill-will of the witness towards him; but he had no right to charge the witness with perjury, and with an attempt to swindle him in another transaction. The very fact that the files and proceedings in the chancery case, in which a decree was entered in favor of Mr. Clink, had been admitted in this case, gave greater force to this charge against the witness, and tended to prejudice him before the jury. There was nothing appearing in the present case to show that the witness had any pecuniary interest in the outcome of the suit, and the attack upon him was most outrageous. It is said, however, that the response of the witness to this last inquiry justifies the attack. The witness responded:

"It is by your false swearing that that happened. It is by your false swearing all the time that you got that."

To this Mr. Clink responded:

"But you didn't make the court believe that, with you and all your henchmen, did you?

"*A*. No, but you did.

"*Q*. Now, sir, you came in in that other case, and you swore that you never gave that paper, didn't you, in that chancery case?

"*A*. I did not swear to that. I swore that I did not know what was in it."

It is apparent from the foregoing that the witness was perhaps excusable in answering as he did; and it is also apparent that the plaintiff was attempting to break the force of his testimony by dragging into the case the fact that in the chancery case the court rendered a decree in opposition to what he had there testified. There is nothing in this case to justify such a proceeding, and for this reason the judgment must be reversed, with costs, and a new trial ordered.

MORSE, C. J., McGRATH and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.