ROBERT R. TURNER v. THE MUSKEGON MACHINE & FOUNDRY COMPANY.

*Sale—Acceptance—Trial of machinery—Practice in circuit court— Costs on appeal.*

1. Where an objection to a question is sustained, counsel should not be permitted, under objection, to state to the jury what he proposes to prove; citing *Clink v. Gunn*, 90 Mich. 140; *Scripps v. Reilly*, 38 Id. 14; *Porter v. Throop*, 47 Id.. 313.

2. Where a vendee is given a definite period in which to test a machine in order to determine whether or not he will accept it, he may at the expiration of that time, or within a reasonable time thereafter, avoid liability by notifying the vendor that he declines to accept the machine, and an acceptance will be implied from his failure to give such notice.

3. Where the acceptance of a proposition modifying a prior agreement is disputed, the question of its acceptance is one of fact for the jury.

4. Where a vendee agrees to commence the trial of a machine, to determine whether or not he will accept it, " as soon as possible," a reasonable time is meant, having regard to the vendee's situation at the time, and the facilities and material he has to commence the test; but error cannot be assigned upon the failure of the trial judge so to define the phrase to the jury, and upon his charging them in the language of the agreement, where his attention was not challenged to the subject by the appellant's counsel, and a more specific instruction asked for.

5. Only one-half of the cost of printing the record is allowed, on account of its unnecessary length, containing, as it does, the entire testimony, including the remarks of counsel and court during the trial.

Error to Muskegon. (Dickerman, J.) Argued June 13, 1893. Decided October 13, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*DeLong & O'Hara* and *Rogers & Rogers,* for plaintiff.

GRANT, J. Plaintiff's cause of action is based upon two contracts, one written, the other verbal. The written contract consists of a proposition made by plaintiff and accepted by defendant, and is as follows:

"I will put you up one of my oil-gas producers, complete, also one of my gas furnaces for melting pig iron, complete, on 30 days' trial, for the sum of thirty-two ($3,200) hundred dollars. This includes stack and everything ready for use. If, after 30 days' trial, it is satisfactory, you to pay me one thousand ($1,000) dollars, balance in 60 days. I am not to put up another melting furnace in Muskegon county, Mich., for any other company or person."

The acceptance on the part of the defendant was written across the face of this proposition.

April 20, 1891, Mr. Howell, manager of defendant company, visited plaintiff at Columbus, Ohio, and plaintiff claims that he then made a verbal contract with the defendant to put in another gas producer for $1,450, without any conditions. The evidence on his part supports the claim. The defendant's claim and evidence are to the effect that this second gas producer was to be put in upon the same terms as the other.

It appears that the defendant was delayed in the construction of the building, and the furnace and the two gas producers were not completed by plaintiff until the 25th of July. There was delay in getting material to make the trial, of which the defendant notified plaintiff by letter August 19, whereupon plaintiff wrote to his agent, who superintended the work for him, to come home. Other correspondence passed between the parties in regard to this delay, but finally tests were made in the presence of the plaintiff on the 23d, 24th, 25th, and 26th of September, 1891. Plaintiff claims that these tests were satisfactory; the defendant, that they were not. October 30, 1891,

plaintiff received a telegram from the defendant, stating that the furnace was not satisfactory, and notifying him to remove it from the premises after he had paid the freight and charges the defendant had against him. He testified that this was the first notice that he received that the defendant was not satisfied. He at once replied, expressing surprise, insisting that the furnace was all right, and asking, if there was anything wrong, why they did not send him word before. He went' to Muskegon, and on November 12 he wrote out, signed, and gave to the defendant, through Mr. Howell, its manager, the following:

"After seeing Mr. Howell this A. M., he agreed to give the furnace another trial of 20 days, to commence the trial as soon as possible from this date. After the 20 days' trial, if the furnace works all right, the Muskegon Machine & Foundry Co. is to accept it. If it does not do the work required, then they are not to accept it. The trial is to be made on malleable iron." ·

Plaintiff wrote out the proposition, from which the above was copied on a type-writer by the defendant's clerk. The two are alike, except that the first read, "we agreed," instead of "he agreed," and did not contain the closing sentence of the second, viz., "The trial is to be made on malleable iron."

The claim of the defendant, and the issues involved, are very clearly set forth in the statement prepared by defendant's counsel, and at their request read to the jury. It reads as follows:

"The defendant claims, and has introduced testimony tending to show, that prior to April 6, 1891, the plaintiff was advised of the kind of business in which the defendant proposed to engage; that the defendant desired in its foundry an appliance to melt iron for gray and malleable iron castings; that the plaintiff, being so advised, recommended as fit for such purpose a device consisting of a gas-producing machine which he had invented, and a certain kind of furnace which he proposed to construct, and stated that by the use of such device the defendant could make a saving of from 25 to

40 per cent.; that in consequence of such recommendations and statements, and other recommendations and statements made by the plaintiff, on the 6th day of April, 1891, the plaintiff was invited by the defendant's representative to reduce to writing a proposition for furnishing such device; that the plaintiff thereupon reduced to writing, and that the defendant accepted, the proposition of that date which has been introduced in evidence; and that thereafter, and on or about the 20th day of April, 1891, the parties contracted for a gas-producing machine to furnish fuel for the defendant's annealing ovens and boilers, said gas-producing machine to be furnished under the same conditions as were expressed in the written proposition of April 6; that thereafter, and during the summer of 1891, the plaintiff constructed such device for melting iron, and also the gas-producing machine referred to in the contract of April 20; that, such appliance for melting iron being tested by trial, changes, alterations, and additions were suggested and made by the plaintiff from time to time, to and including about the 12th day of October, 1891, which changes, alterations, and additions were made by the plaintiff for the purpose of adding to the capacity and effectiveness of said appliance for melting iron, and the defendant claims that until that date such appliance cannot be said to have been completed, nor then, unless by trial it proved effective for the purpose for which it was constructed; that thereafter said appliance for melting iron was tried and tested, but that it failed to work successfully, and did not work to the satisfaction of the defendant, of all of which the plaintiff was fully advised; that when the last test was made, in October, neither party to the contract understood that the furnace or any part of the melting apparatus was in the condition in which it ought to be accepted by the defendant; that thereafter, and on the 28th day of October, 1891, the plaintiff sent a telegram to the defendant's foreman, J. H. Sautter, saying, 'Put in small heats until I come, next Monday noon;' that the defendant's representative being shown such dispatch, and because the tests which had been made up to that time were unsuccessful and unsatisfactory to the defendant, the defendant, on the 30th day of October, 1891, notified the plaintiff by telegram to the effect that his furnace (meaning thereby the whole apparatus for melting iron, including the gas machine) was not satisfactory, and to remove it from the premises, after paying freight and charges against it; that the plaintiff well understood the purport and meaning of said telegram, and that by the term 'furnace' was included the entire apparatus, as the said apparatus had been so called in their correspondence, negotiations,

and talk concerning its operations; that the plaintiff replied to such telegram by letter, and thereafter, and on the 12th day of November, 1891, again visited the defendant, and had a conversation with Mr. Howell, defendant's manager, concerning the gas-producers, melting furnace, and annealing ovens; that the fact that the annealing ovens had not been tested was then mentioned, and the reason why they had not been tested was stated by Mr. Howell to plaintiff to be because the furnace for melting iron had not been a success, and that the defendant was therefore unable to test the annealing ovens or the gas-producing machine in connection therewith, and that, as soon as castings could be procured for that purpose, the annealing ovens would be tested, and that the plaintiff agreed to such arrangement; that it was then agreed between the plaintiff and Mr. Howell to give the furnace another trial of 20 days; that, before the making of such agreement, Mr. Howell had expressed to the plaintiff that he must soon visit the West, and that it was understood between them that the trial referred to in the agreement of November 12 was not to be made until after his return; that, within a very few days after November 12, Mr. Howell went to Colorado; that during his absence the plaintiff wrote letters requesting payment for the gas-producing machine which had been constructed for use in connection with the annealing ovens and boilers, and threatening suit unless the same was paid; that soon thereafter, and on, to wit, about the 23d day of November, his claim against the defendant was placed in the hands of his attorneys for collection; that Mr. Howell returned to Muskegon about the 1st of December thereafter, and ascertained that the plaintiff's claim had been placed in the hands of an attorney; that he thereupon wrote the letter of December 2, which was mailed to and received by the plaintiff a few days thereafter; that such letter was received by the plaintiff, and that by such letter the plaintiff was again fully informed that such appliance, so far as it had been tested, was unsatisfactory to the defendant; that a test was made of the annealing ovens within the time contemplated by the parties, and as soon as suitable castings could be procured for such purpose, and that the gas-producing machine in connection with such annealing ovens was thoroughly tested, failed to do its work, and proved unsatisfactory to the defendant, of all of which the plaintiff was fully advised; that, in consequence of the failure of the gas-producing machine to work satisfactorily in connection with the boilers and annealing ovens, its connections with the boilers were removed, and the gas-producing machine also removed; that none of

the work done by the plaintiff's appliances was done to the satisfaction of the defendant; that by reason of their failure, and the impossibility of making them work economically and satisfactorily, it has never accepted any of said appliances; that the defendant was under no obligation to accept the same, and never did accept the same, or any part thereof; that such appliances, so furnished by the plaintiff, were proven by trial and tests to be of no value for the purposes for which they were constructed, and that such appliances are not, and never have been, the property of the defendant."

The court then instructed the jury as follows:

"1. Under the contract between the parties by which the work and material to be performed and furnished by the plaintiff were performed and furnished, the time for the completion of the same was not expressed. It was therefore the duty of the plaintiff to perform his part of the contract in a reasonable time, as it was the duty of the defendant to be prepared to make the trial provided for in the contract within the time contemplated and understood by the parties after the appliances were completed to the satisfaction of the plaintiff, that is, so that the plaintiff could properly say, 'My work under the contract is fully performed; nothing remains for me to do.'

"2. So long as the appliances did not work to the plaintiff's satisfaction, and changes were made therein at his own suggestion, by lowering or raising the bridges in the melting furnace, by putting on a blow pipe, or by lowering the roof of the furnace in order to increase its capacity or its effectiveness, if you find that such changes were made by the plaintiff, or by his direction, such appliances cannot be said to have been completed, within the meaning of the terms of the contract between the parties.

"3. If the defendant was not prepared to make the trial within the time contemplated by the parties after the appliances were so completed, and by correspondence, letters, and telegrams notified the plaintiff from time to time of such fact, and the plaintiff (Turner) did not object to the postponement of the time for trial, but impliedly assented thereto, and, when informed that the defendant was prepared, came on and made the trial and test without objection, then the fact, if it be a fact, that the trial was not made within two months after such appliances were completed would not oblige the defendant to accept such appliances until after such trial had been made for such time as was contemplated by the contract.

"4. To entitle the plaintiff to recover for the 'melting furnace,

so called, and the gas-producing machine connected therewith, he must satisfy the jury, by a fair preponderance of evidence, that such melting furnace and gas-producing machine, so constructed by him, operated in the several tests, and in the work of melting iron, to the satisfaction of the defendant company, or that the defendant company actually waived said trial, and accepted the same.

"5. To entitle the plaintiff to recover for the gas-producing machine made to furnish fuel for the defendant's boilers and annealing ovens, the jury must be satisfied, by a fair preponderance of the evidence, of one of the following propositions:

"a—That such machine was furnished by the plaintiff to the defendant without the condition that it was to do the work for which it was constructed satisfactorily.

"b—That the trial or the test thereof was made, which was satisfactory to the defendant.

"c—That by or through the fault of the defendant, to which the plaintiff neither contributed nor assented, such trial or test was not made within the time contemplated by the parties."

These instructions were given at the request of the defendant, except that the first three were modified as hereinafter noted. Eight other requests prepared by defendant's counsel were given to the jury, which are very lengthy, and fully cover its theory of the case. They are not necessary to an understanding of the questions raised.

Plaintiff's second and fifth requests, which were given to the jury, are as follows:

"2. I instruct you that by this written contract the plaintiff did not warrant his furnace or gas-producing machine to do any particular class or quality of work or service. He simply offered to put his melting furnace and gas producer into the defendant's works on a trial of 30 days, and if the defendant, after such trial of 30 days, was satisfied with the furnace and producer, it was to accept and pay for them, as provided in the proposal; and it lay solely with the defendant to say whether it was satisfied or not. If it said it was not satisfied, it had a right to reject the property, and it owed the plaintiff nothing. But I charge you that if the plaintiff constructed the works within a reasonable time after the proposal and acceptance thereof, and at the place required by the defendant, and that the defendant had notice of the completion of

the same, and that the same were completed, ready for use and trial, according to the contract, and as understood by the parties,. and if you further find from the testimony in the case that the parties to the contract understood that the trial of the furnace and gas producer was to take place immediately after they were complete and ready for use and trial, then the defendant had 30. days after such completion and notice to make the trial, and, if defendant was not satisfied with the furnace and producer after such trial, it was the duty of defendant to so notify the plaintiff; but if the defendant failed to make such trial, or failed within a reasonable time after the expiration of said 30 days to notify the plaintiff that the property was not satisfactory, then the law conclusively presumes that the defendant was satisfied and had accepted the property, and imposes upon the defendant the liability to pay therefor the contract price, unless you are satisfied from the testimony that the plaintiff assented and agreed to some delay or postponement of the time of trial, or that further trial might be made."

"5. As to the melting furnace, I further charge you that if the defendant, by its authorized agent, on November 12, 1891, agreed with the plaintiff to give the furnace another trial of 20 days on malleable iron, to commence the trial as soon as possible from such time, and, if the furnace worked all right, to accept it, and if you find that the defendant did not attempt to give the furnace another trial of 20 days, commencing as soon as possible after November 12, 1891, then I charge you that the defendant is liable to the plaintiff for the furnace, and producer used with it, and you will accordingly find in favor of the plaintiff for the contract price of the same."

1. The defendant's first and third requests were modified by the court by eliminating therefrom the statement that "it was the duty of the defendant to be prepared to make the trial provided for in the contract within a reasonable time after the appliances were completed," and inserting, in lieu thereof, that it was its duty to be prepared to make such trial "within the time contemplated and understood by the parties after the appliances were completed." We think the modification was correct. The contract, upon its face, implies that the 30 days were to commence upon the completion of the contract upon the

part of the plaintiff, and a notification of that fact to the defendant. The court, however, instructed the jury that no time was fixed by the written contract for the commencement of the 30-day trial, and left it to them to determine, from the telegrams, letters, and other evidence in the case, when it was agreed by them that the 30 days should commence to run. The charge was favorable to the defendant.

2. The defendant's second request was modified by inserting the words, "if you find that such changes were made by the plaintiff, or by his direction." The request in its original form would have left the jury to understand that changes were made at the suggestion and direction of the plaintiff. The evidence was conflicting as to who directed these changes. They were made after the furnace and gas producers had been completed, as claimed by plaintiff, and after, as he contends, the 30 days had begun to run. The only bearing of this evidence was upon the question whether the time of the trial was running, or whether it it had been waived or extended by the plaintiff, a question which was properly left to the jury. It was really immaterial by whose direction they were made, for they appear to have been assented to by the plaintiff. The court properly instructed the jury upon the effect to be given them. We see no error in the modification.

3. It follows from what has already been said that the plaintiff's second request correctly embodies the law applicable to this case, and was properly given. A definite period of trial had been agreed upon. At the expiration of that period, or within a reasonable time thereafter, the defendant might have avoided liability by notifying plaintiff that it declined to accept the property. If it failed to do this, an acceptance will be implied. Miller, Cond. Sales, § 38; *Pump Co. v. Inman,* 59 Hun, 230; *Heater Co. v. Mansfield,* 48 Vt. 378.

4. If the paper of November 12 was agreed to by both parties, it entirely abrogated the 30-day clause of the original contract, waived all prior tests, and 'the defendant had no longer the right to reject the property at its pleasure. Under this agreement, if made, the defendant was obligated to accept the furnace if it worked all right, and also to commence the trial of 20 days as soon as possible. Shortly after November 12, Mr. Howell went to Colorado, and returned about the 1st of December. He testified that, prior to the making of this proposition, he informed plaintiff that he must be absent for some days, and that it was understood that the trial should not commence until his return. This was denied by the plaintiff. On his return he ascertained that plaintiff had placed his claim in the hands of an attorney for collection. He wrote plaintiff December 2, mailing the letter December 4, saying that he would bring the matter before the defendant's directors, and would then notify him what action they would take upon his last proposition of November 12. It is evident from this, and other testimony of Mr. Howell, that he did not consider the proposition of November 12 accepted. The acceptance was disputed, and therefore became a question of fact for the determination of the jury. But the principal complaint made against this charge is that the term "as soon as possible," has a legal meaning, and that the jury were not instructed as to this meaning. Undoubtedly, this phrase means a reasonable time, having due regard to the defendant's situation at the time, and the facilities and material it had to commence the test. *Atwood v. Emery*, 1 C. B. (N. S.) 110. Had the attention of the court been called to the matter, such an instruction would undoubtedly have been given. The charge in the language of the agreement was correct. If the defendant's counsel did not then deem it important to call the attention of the court and jury to this subject, they cannot now be

heard to complain, and the judgment cannot, for that reason, be reversed.

5. On cross-examination of defendant's witness Howell, the following took place:

"*Q.* Did you not furnish the engraving for the picture that appears in this number [showing witness a newspaper] of the salesroom of the Muskegon Improvement Co., and the architect and surveyor's office of the Muskegon Improvement Co., as well as the cut of the residence of C. C. Howell on Muskegon Heights?" plaintiff's counsel *stating* " the materiality is for the purpose of affecting this witness' credibility.

" *The Court:* I don't see how, even for that purpose, it is competent.

" *Counsel:* Supposing a man writes and publishes a falsehood, does that affect his credibility?

" *The Court:* If it is anything material to the case here, I should think it was competent.

" *Counsel:* Isn't it competent to show that— Supposing we show from the witness he is in the habit of writing,— I don't mean to say that this man is,—supposing we could show from the witness' own mouth that he is in the habit of writing and publishing a falsehood, would not we be entitled to inquire into it?

" *The Court:* I don't think it, unless it is something material to the case on trial.

" *Counsel for Defendant:* I desire to interpose an exception to the remarks of counsel.

" *Counsel for Plaintiff:* I want to show,—I do not know whether I can or not, but I want to show by this witness that he furnished the cut or the engraving of this picture. in this number of this periodical, the Peninsula State, of May, 1891, from which these three pictures that I have indicated were made, and that they are not truthful representations of the salesroom of the Muskegon Improvement Co., of which he says he was manager, and of the architect and surveyor's office of the Muskegon Improvement Co., and that C. C. Howell had no residence on Muskegon Heights at that time. I do not assert that it is true.

" *Counsel for Defendant:* I think it is the duty of the court to instruct the counsel that he has no right to make such a statement.

" *The Court:* I don't think it is competent.

"*Counsel for Plaintiff:* I will take an exception. I will state further, now, that I expect to show, if the court will allow me to, that this witness did ·furnish those cuts, and that they are not truthful representations of these two rooms, and that the witness had no house at Muskegon Heights, and that it was representing to the world a state of facts with reference to the Muskegon Heights, to boom which locality the improvement company was formed, and of which˙ company Mr. Howell was the manager.

"*Counsel for Defendant:* I object to˙ the statement of counsel.

"*Counsel for Plaintiff:* I do this simply for the purpose of affecting this witness' credibility as a witness in this trial.

" *The Court:* I don't think it is competent."

These statements of counsel were improper in the presence of the jury, and the court should have prevented them. Counsel should have rested content with the ruling of the court upon the question, and should not have been permitted, under objection, to state to the jury what he proposed to prove. *Clink v. Gunn,* 90 Mich. 140; *Scripps v. Reilly,* 38 Id. 14; *Porter v. Throop,* 47 Id. 313.

For this error the judgment must be set aside, and a new trial ordered.

The entire testimony, including the remarks of counsel and court during the trial, is printed in the record, which contains 523 pages. On account of its unnecessary length, only one-half of the costs for printing the record will be allowed.

HOOKER, C. J., McGRATH and LONG,, JJ., concurred. MONTGOMERY, J., did not sit.