## RATHBUN *v.* PARKER.

1. PLEADINGS AND PROOFS—AMENDMENT TO DECLARATION.

   Plaintiff in an action to recover damages for fraudulent representations as to the value of a patent right was properly permitted to amend his declaration, after the testimony was closed and arguments had, to meet the proof in respect to a particular false representation to the effect that a certain prominent and wealthy person had purchased a small amount of territory for a large price. GRANT, J., dissenting.

2. TRIAL—VERDICT—SPECIAL QUESTIONS.

   A general verdict should not be received without compelling an answer to special questions, involving important and material testimony.

Error to Shiawassee; Wisner, J., presiding. Submitted June 9, 1897. Decided July 13, 1897.

Case by Bethuel D. Rathbun against George A. Parker for fraudulent representations. From a judgment for plaintiff, defendant brings error. Reversed.

We are favored with no brief on the part of the appellee. We must therefore assume that he is content with the statement of facts made in the appellant's brief, which we adopt:

''Plaintiff, in the fall of 1892, was the owner of a small store in the village of Bancroft, Shiawassee county, Michigan. The defendant at that time lived on a farm near the village of Bancroft, was postmaster and justice of the peace, and also was buying potatoes in the village of Bancroft, and selling them in the city of Detroit. The 25th of November, 1892, the defendant was in Detroit, and stopped at Rice's Hotel, where he casually met one O. F. June. June was showing a patent window screen patented by one S. U. Tierney, and gave defendant some circulars describing the patent. That evening, after Parker arrived home, and while in the post-office, he was showing the circular to some mechanics and other citizens of Bancroft, when plaintiff came in, and took part in the conversation, borrowed a circular, and took it home with him. Plaintiff wrote June the next day the following letter:

'''BANCROFT, MICH., Nov. 26, 1892.

'''MR. O. F. JUNE, Esq.

'''*Respected Sir:* Mr. George Parker, of this town, has called my attention to Tierney novelty window screen, and tells me that you are desirous of selling territory. From what I see of it and am able to judge from the cut, I am quite favorably impressed with it, and shall be pleased to hear from you further. I have a grocery stock and shoe shop in my place here, which I inventoried at nearly $4,000, which I would like to turn into some such enterprise. If you can think of entertaining such a proposition, please reply by return mail. Should you have one or more States entire left, I desire to have you estimate thereon, but more especially the counties near by Bancroft. Please be prompt, and oblige,

''Yours respectfully,

'''B. D. RATHBUN.'

''On the 2d or 3d of the following December, 1892, plaintiff and defendant went to Detroit together, and there met June, and the plaintiff examined the screen. On the 5th of December, 1892, June came to Bancroft to sell them some territory, and there he made a bargain with Rathbun and Parker. He deeded the plaintiff and defendant the entire State of Wisconsin, and all of Michigan, except 16 counties, for which Rathbun gave June a bill of sale of a stock of goods, and Parker claims to have given June a note of $200 against a third party, and two notes of his own, amounting to $800, for his share of the

patent right. June stayed in Bancroft a week or 10 days, and finally sold the goods to Charles Parker for $800, and then returned again to Detroit. Parker and Rathbun visited some manufacturers in Owosso, Ovid, and some jobbers in Saginaw and Detroit, for the purpose of seeing about selling the screens in case they were manufactured. They bought a few of the castings manufactured, but were unable to get any great quantity at what they considered a fair price. June represented to them that Campau & Fox were going to start a factory in Birmingham, and it would be better to get them there. But this they were unable to do; so they visited Detroit at different times, and went to Monroe, to try and get the castings, and finally they bought 25 pounds at Ft. Wayne, Ind., but they proved to be of a very poor quality, and they failed to find any one who would manufacture the . castings. This took them to nearly spring, and Parker claims that they agreed to postpone doing anything further until fall; at least, nothing further was ever done in the way of manufacturing the screens, either by the plaintiff or defendant. In the spring of 1893 defendant went to Chicago, and engaged in a small business there. He took plaintiff's son with him, and took him into his employ, but discharged him after a short time. Soon after his discharge, and on the 22d day of May, 1893, plaintiff commenced this suit against defendant, claiming conspiracy between him and June and Tierney to cheat and defraud him, the said plaintiff. Plaintiff recovered verdict and judgment for $725.61."

The declaration contains two counts. The first alleges that plaintiff exchanged his stock of merchandise with one S. U. Tierney for a deed of letters patent on this screen to himself and defendant, with the right to manufacture it in the States mentioned, in consequence of the false and fraudulent representations by defendant that he, "the said Parker, knew where there was a good and profitable patent window screen, known as the 'novelty screen;' that the patent of the same was very valuable, and all could be readily sold that could be made of said screens; that he (the said Parker) knew this because he had seen them, and had investigated the same; that said patent was worth the sum of $7,000 for the right to man-

ufacture and sell the same in the States of Wisconsin and Michigan; and that, if he (the said Bethuel Rathbun) would purchase a one-half interest in said patent, he (the said Parker) would purchase the other one-half, and that they would manufacture said screen." The second count alleges a conspiracy between defendant, Tierney, and June upon the same representations as those stated in the first count. Both counts allege that the patent was worthless. The plea was the general issue.

*Selden S. Miner* and *Frank F. Bumps*, for appellant.

*Watson & Chapman*, for appellee.

Grant, J. (*after stating the facts*). 1. After the testimony was closed and the arguments had, the court permitted the plaintiff to amend his declaration by adding thereto that defendant "represented that Daniel J. Campau, a politician, and chairman of the Democratic State Central Committee, had purchased a small amount of territory for a large price, and had paid therefor $10,000, and that he was a millionaire, and would not have gone into it if it had not been a good thing." I do not think that the original declaration stated a cause of action. The sole representation was as to the value of a patent right, coupled with a promise by defendant to buy a half interest, and to enter with plaintiff into the business of manufacturing. It was a statement of a mere opinion, and the declaration fails to state—what the proof shows —that plaintiff examined the screen before buying, and was as competent to judge of its value as was the defendant. Defendant was entitled to know before proceeding to trial what the representations were upon which he was to be held liable for the value of plaintiff's goods, none of which he had received, and from the sale of which he had derived no benefit. The learned circuit judge allowed the amendment upon the theory that the record disclosed that all those who were shown to have heard the representations had been witnesses in the case. The question

was raised as to the competency of this testimony under the original declaration when the first witness was upon the stand. Plaintiff did not then ask to amend, but waited until the court was proceeding to instruct the jury. I do not think the amendment should have been permitted at this stage of the case.

2. Two special questions were submitted to the jury: (1) "Did Parker give any valuable consideration for his share of the patent, and did it equal the amount paid by Rathbun?" To this question 10 jurors voted "No," and it does not appear that the other two jurors voted. (2) "If you answer 'Yes' to this question, did Parker get it back again, or any part thereof, without paying for it?" To this one juror voted "Yes," and one voted that Parker paid $700 for his two notes of $400 each. It does not appear how the other 10 voted. No objection was made to the submission of these questions. They bore upon the good faith of defendant. It would be difficult to understand how a jury would find defendant liable if he fulfilled his agreement with plaintiff, and paid his full share of the purchase price. Men are not in the habit of making false and fraudulent representations for the purpose of defrauding their neighbors without receiving a consideration. The testimony presents some very peculiar features, not necessary to note, and these questions involve very important and material testimony. It was error to receive a general verdict without compelling an answer to these special questions.

3. When the defendant was testifying, counsel for the plaintiff objected to a question, in the following language: "Objected to. They must first show that the man has a conscience." Since the case must be reversed for other reasons, we refrain from commenting upon this language. Its use is not likely to occur upon a new trial. *Carter* v. *Hill*, 81 Mich. 280; *Sullivan* v. *Deiter*, 86 Mich. 404; *Clink* v. *Gunn*, 90 Mich. 140.

Several questions are raised upon the admission and rejection of testimony, but it is not necessary to discuss them.

Judgment reversed, and a new trial ordered.

MONTGOMERY, J.   I concur in the result, but do not think the amendment to the declaration was error.

LONG, C. J., and MOORE, J., concurred with MONTGOMERY, J.   HOOKER, J., did not sit.