KERR *v.* NATIONAL FULTON BRASS MANUFACTURING CO.

1. MASTER AND SERVANT — INJURY TO SERVANT — LIABILITY OF MASTER—GUARDING DANGEROUS MACHINERY—STATUTES—EVIDENCE—QUESTION FOR JURY.

> The liability of a master for injury to a servant by reason of failure to guard dangerous machinery, under the provisions of Act No. 113, Pub. Acts 1901, depends upon the fact of the order having been made by the factory inspector and brought to the notice of the master; and where, in such action, there was conflicting evidence whether such order had been made and notice thereof received, the question was properly submitted to the jury.[1]

[1] As to master's statutory liability for defects in condition of plant, see note to *Coley* v. *Railroad Co.* (N. C.), 57 L. R. A. 817.

2. SAME — GUARDING DANGEROUS MACHINERY — MACHINES IN-
STALLED SUBSEQUENT TO NOTICE.

   A notice to guard emery wheels in use in defendant's factory
   is broad enough to include wheels subsequently installed.

3. TRIAL—MISCONDUCT OF COUNSEL—IMPROPER QUESTIONS.

   In an action for negligently causing the death of plaintiff's in-
   testate, by failure to guard dangerous machinery, after a
   ruling excluding an inquiry as to defendant's interest in the
   case, it is error to attempt, by further questions, to bring to
   the attention of the jury the fact that defendant was pro-
   tected by liability insurance, with the evident purpose of
   importing into the case facts not bearing upon the issue to be
   tried.

Error to Wayne; Hosmer, J. Submitted November
10, 1908. (Docket No. 16.) Decided December 21, 1908.

Case by Mary Kerr, administratrix of the estate of
Charles Kerr, deceased, against the National Fulton Brass
Manufacturing Company for the negligent killing of
plaintiff's intestate. There was judgment for plaintiff,
and defendant brings error. Reversed.

*Keena, Lightner & Oxtoby,* for appellant.

*Samuel E. Jones,* for appellee.

MONTGOMERY, J. This action is brought to recover
damages for the death of plaintiff's husband; the claim of
negligence relied upon at the trial being that the defend-
ant failed to guard an emery wheel which was used in
its factory, although required to do so by the direction
of the factory inspector, and that plaintiff's intestate, who
was employed in grinding castings on the emery wheel in
question, was instantly killed on the 16th of June, 1904,
while grinding a malleable iron casting, and that, while
thus engaged, the emery wheel flew apart, and a portion
of the broken wheel hit him in the head, causing his death.
A verdict was rendered in favor of the plaintiff of $3,500
and judgment entered thereon.

The case is based upon Act No. 113 of the Public Acts
of 1901, and particularly upon section 8, which provides:

"All vats, saws, pans, planers, cogs, set-screws, gearing and machinery of every description, shall be properly guarded when deemed necessary by the factory inspector."

There was evidence tending to show that on the 12th of November, 1902, Henry J. Eichoff, a deputy factory inspector, visited the defendant's plant and gave a written notice to defendant requiring defendant, among other things, to guard the emery wheels. There was testimony tending to show that at least one of the emery wheels in use on defendant's premises was guarded by an iron guard, but that the wheel in question was not so guarded. The evidence offered to show this requirement was a carbon copy of a notice claimed to have been served by Eichoff upon the defendant, the original of which was not produced. Section 13 of the act provides that the inspector shall make a report of his inspection to the commissioner of labor, and shall leave a copy of his report with the person in charge of the factory. Section 15 of the act requires at least an annual inspection of manufacturing establishments. This section also provides that the commissioner of labor shall present to the governor, on or before the 1st of February of each year, a report of such inspection. These reports are found in the annual publications made by the commissioner of labor. The reports of the commissioner of labor from the years 1901 to 1904, inclusive, do not show a report from the factory inspector requiring the guarding of this emery wheel.

Two questions are suggested:

*First.* It is contended that the liability of the defendant should not be made to depend upon the oral testimony of the factory inspector, but that some written record of the orders made by the inspector should be had before the manufacturer should be charged with the violation of the statute.

*Second.* That, as the alleged notice to guard the emery wheels was given before the installation of the present emery wheel, such order cannot be held to relate to the emery wheel in question.

We think the liability of the defendant depends upon the fact of the order having been made by the factory inspector and brought to the notice of the owner. In the present case, such order did not rest in parol, but was in the form of a written notice, if the testimony offered on the part of the plaintiff is to be believed. There was upon this question a sharp conflict of testimony, and the question presented was one of fact for the jury. We also think that this notice was broad enough in its terms to include emery wheels subsequently installed. If this were not so, any change in the factory occurring between the periods of inspection would authorize a complete departure from the spirit, and indeed from the letter, of the directions given by the factory inspector, and would render the provision for inspection of little value. The testimony offered by the plaintiff as to the guarding of other emery wheels in defendant's plant was competent, if for no other purpose than as tending to show that it was practicable to obey the order of the factory inspector.

After plaintiff and defendant had both rested, and plaintiff had called a witness in rebuttal, plaintiff's counsel called Mr. Beal, who was secretary and treasurer of the defendant company, as a witness, and propounded the following question:

"What interest has the National Fulton Brass Manufacturing Company in this case?"

This question was objected to and the answer excluded. Not content with this ruling, he again asked:

"You secured a liability insurance at that time, did you not, Mr. Beal?"

This was also objected to and excluded. Defendant's counsel thereupon moved the court to withdraw the case from the consideration of the jury. This was refused, and, so far as the record discloses, there was no reprimand of plaintiff's counsel, nor were the jury given any special instruction relating to this alleged misconduct of plaintiff's counsel. It is not conceivable that plaintiff's counsel be-

lieved the testimony offered to be competent, or that it could bear in the remotest degree upon any issue presented to the jury for trial. He himself had brought his suit against the National Fulton Brass Manufacturing Company, the defendant in this case. If that company was not liable, the suit should not have been brought, and he must have known it. No question was raised that the defendant company was the owner of the factory in question, and that the alleged negligence, if proven, was the negligence of the defendant company. The only purpose for which the question first quoted was propounded was to divert the attention of the jury from the issue, and, if possible, to seek to prejudice the jury by impressing upon them that it was of no consequence to the defendant of record whether the verdict went for the plaintiff or defendant. This was manifestly an attempt to import into the case facts which did not bear upon the issue. Had the proceedings stopped here, there might be some room for saying that the question was asked in good faith; but, after this ruling had been secured, a question identical in principle, but with the purpose of showing that the liability, if any, was the liability of some unknown insurance company, was propounded, doubtless in the belief that the jury might be less careful of the rights of the insurance company than of the defendant. This was absolutely without excuse, and is not only deserving of censure, but calls upon us to make sure that this attempt to divert the jury from the real issue in the case shall not cause a miscarriage of justice. The conduct of counsel is similar in kind to that censured by this court in the cases of *Clink* v. *Gunn*, 90 Mich. 140, and *Turner* v. *Foundry Co.*, 97 Mich. 166. If counsel persist in attempts to take unfair advantage of litigants, the responsibility must rest with them and not with the court. This case was a close one on its facts. The defendant was entitled to have its own case, and not that of some one else, adjudged by this jury. The calling of the defendant's officer to the stand and propounding these

questions was in effect an assertion of the existence of the fact, as counsel well knew. The jury would not fail to see this, and to infer from the objection made by defendant's counsel that the facts were as stated; and that the facts so stated had no relevancy to the issue, and in no way affected the question of defendant's liability, is so entirely clear that it cannot be assumed that plaintiff's counsel was ignorant of the law, and, if he were thus ignorant in the outset, he could not urge that excuse for propounding the second question after he had been properly instructed by the trial judge.

The judgment is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.