*In re* FINE'S ESTATE.

BERK *v.* FINE.

1. TRIAL—STATING PROPOSED EVIDENCE IN JURY'S PRESENCE IS IMPROPER.

Practice of stating in presence of jury proposed evidence after an adverse ruling as to its admissibility is highly improper, and should not be permitted by trial court.

2. WITNESSES—WITNESS MAY BE DISCREDITED IN PROPER MANNER.

In will contest case, where contestants claimed will was a forgery, counsel had right to cross-examine attorney, who testified that he had drawn will and witnessed testator's signature, for purpose of discrediting him, but it should be done in proper manner and by competent evidence, and not by unsworn statement of proposed evidence in jury's presence after its exclusion by trial court.

3. APPEAL AND ERROR—UNSWORN STATEMENT BY COUNSEL AS TO PROPOSED EVIDENCE IS ERROR.

Unsworn statement by contestants' counsel, in presence of jury, after cross-examination of attorney who testified he had drawn will and witnessed testator's signature had been suspended by court, that he could show that witness perjured himself before grievance committee of bar association, and that his testimony before committee, under oath, was false, although said testimony was not given under oath, *held*, prejudicial error.

4. SAME—IMPROPER QUESTION ERRONEOUS, ALTHOUGH STRICKEN FROM RECORD.

Mere asking of question by counsel, in which he stated purported evidence of a highly prejudicial nature which had been excluded by court, was reversible error, since, although stricken from record, on objection, it could not be stricken from minds of jury.

Error to Wayne; Hunt (Ormond F.), J. Submitted October 9, 1929. (Docket No. 46, Calendar No. 32,656.) Decided January 24, 1930.

Petition by Samuel Berk for probate of an alleged will of Benjamin Fine, deceased, was contested by Alex Fine and others, heirs at law of deceased. Upon certification of proceedings to circuit court, trial was had before court and jury resulting in verdict and judgment for defendants. Plaintiff brings error. Reversed, and new trial granted.

*Dohany & Hersch,* for plaintiff.

*Miller, Baldwin & Boos* (*Ivin E. Kerr* and *Leslie T. Jones,* of counsel), for defendants.

McDONALD, J. On October 25, 1924, Samuel Berk presented for probate in the Wayne probate court an instrument purporting to be the last will and testament of Benjamin Fine. It was contested by brothers and sisters and nephews of deceased on the ground that the signature to the will was a forgery. The issue was tried before the court and jury. The verdict and judgment disallowed the will. The proponent has brought error.

Benjamin Fine was 48 years of age at the time of his death. He had been engaged in the building of apartment houses in the city of Detroit, and had accumulated considerable property. He left a widow, but no children. It was not known by the widow or any of the relatives that he had made any testamentary disposition of his property. But one Albert Miller, a lawyer in the city of Detroit, presented a will after the widow had petitioned for the appointment of an administrator. He explains that his delay in presenting it was due to the fact that he did not learn of Mr. Fine's death until he saw a legal publication concerning the administration of his estate. The will disposed of property valued at $250,000.

The major portion was left to the widow, but provision was made for the payment of $3,000 to each of the brothers and sisters, and $1,000 to each of his nephews. Mr. Miller claims that he drafted the will as directed by Mr. Fine, and that it was signed in his presence and in the presence of his brother, Joseph Miller. Both were witnesses on the trial and testified to the genuineness of the signature.

The assignments of error which seem to have most merit relate to the cross-examination of Albert Miller, to repeated attempts to discredit him by incompetent and immaterial proofs, and to prejudicial statements by counsel as to what excluded evidence would show.

It appears that Mr. Miller had represented one Elizabeth Klopfer in a criminal case in which she was charged with embezzlement. Mr. William Kaufman assisted him. Subsequently Kaufman complained to the grievance committee of the Detroit bar association that Miller had cheated him out of his fees. Elizabeth Klopfer also filed charges in which she claimed that she had been overcharged by Miller. In cross-examining Miller as to these charges and the findings of the committee, counsel for the defendants was met with the objection that the findings were the best evidence. After considerable discussion by court and counsel as to the functions of the grievance committee, the court said:

"I will suspend this examination now on those various alleged illegal practices by the witness with his clients for the present until you show me some authority.

"*Mr. Boos:* That covers the matter of Elizabeth Klopfer. I am trying to prove by this witness improper and unethical treatment by him of his client, Elizabeth Klopfer, in that he extracted and obtained $1,000 from her illegally and without right. I am

offering to prove that he took advantage of her ignorance and lack of knowledge; that he misstated the facts to her in regard to her release; that he misstated the facts to the prosecuting attorney in regard to what fee he was to obtain.

"*The Court:* I will say to the jury this statement made by counsel is not proof, you understand.

"*Mr. Boos:* Yes.

"*The Court:* The jury are not prejudiced by what you hope to prove.

"*Mr. Boos:* I want the court and jury to understand that is merely a formal offer of proof to go into the record. It is put upon the record to reserve the question. We are further prepared to prove or offer by this witness evidence that Elizabeth Klopfer was deprived by him of some $800 additional money beyond the contract of employment, against the will of Elizabeth Klopfer; also that one William Kaufman, a practicing lawyer at this bar here, made a complaint against this witness before the bar association, based upon an alleged contract between Mr. Kaufman and this witness, for a division of some fees in a criminal case, and that this witness perjured himself before the grievance committee.

"*Mr. Hersch:* I think that is going too far, to make such a statement before the jury.

"*The Court:* I think he has a right to state how he expects to prove it. But I will say to the jury, it is not proven because he claims that he offers to prove it.

"*The Witness:* Your honor please, as a matter of personal privilege, as a member of the bar and an officer of this court, at this time I wish—

"*Mr. Boos:* Just a minute!

"*The Witness:* I wish to make the statement, Mr. Boos, that your statement is both dishonest and untrue.

"*Mr. Hersch:* It hasn't anything to do with—

(Bedlam broke loose.)

"*Mr. Boos:* I offer to prove on March 7, 1922, the bar association made a report, in which they found—

"*The Court:* No! Don't state what they found because that might be prejudicial.

"*Mr. Boos:* We offer to prove by this witness that his conduct in the Elizabeth Klopfer case was improper, unethical and unprofessional. We offer to prove in the Kaufman case, by this witness, that his testimony before the board, under oath, was false. We offer to prove in the case of —— in the matter of —— I am not as familiar with these proceedings, they were just given to me. There is quite a number of them."

The practice of stating proposed evidence after an adverse ruling is highly improper, and should not be permitted by the trial court. If in the opinion of counsel it seems necessary to inform the court of what he expects to prove, it should be done in the absence of the jury. In the instant case, the damaging charges against the witness as shown in the offer to prove were not thereafter given in evidence. They remained with the jury entirely on the unsworn statement of counsel. They left a plain inference that these various matters reflecting on the character of the witness could be proven but for the objection of opposing counsel. One of the statements in this case well illustrates the harmful effect of permitting counsel to state in the presence of the jury details of excluded evidence. Counsel stated he would show that the witness "perjured himself before the grievance committee," "that his testimony before the board, under oath, was false." It is conceded that the testimony of the witness before the grievance committee was not given under oath. Therefore counsel could not prove that he perjured

himself, yet he told the jury such was the fact and if permitted he could prove it. All of the other matters in counsel's statement were equally harmful to proponent's case. Albert Miller, against whom these charges were made, was an important witness in support of the will. He testified that he had drawn it and witnessed the signature of the testator. It was the right of counsel in his cross-examination to discredit Miller, but he ought to have done so in a proper manner and by competent evidence. The jury found the will was a forgery. To what extent they were influenced by the prejudicial statement of counsel, we have no means of knowing. But its natural tendency was to influence them and it undoubtedly did. The detailed statement of what counsel claimed he could prove by the excluded evidence was error which warrants a reversal of the judgment. *Turner* v. *Muskegon Machine & Foundry Co.*, 97 Mich. 166, and cases cited.

Again, notwithstanding the ruling of the court, counsel in his direct examination of William Kaufman, who was called to testify for the contestants, asked the following question:

"*Q.* Do you know, Mr. Kaufman, that in the determination of the grievance committee of the bar association, it was held, after a full investigation of the facts, that the conduct of Mr. Miller in his relation to his client, Elizabeth Klopfer, was improper and unprofessional and that he took advantage of the woman's situation—."

Counsel who was conducting this examination is an able lawyer, and we do not care to reflect on his intelligence by assuming that he thought this a proper question. He could not have expected an answer, for the witness had just told him he was not familiar with the findings of the grievance com-

mittee. He must have known the court would not permit an answer. If his intention was to get prejudicial matter before the jury, he accomplished his purpose by so framing the question as to inform the jury that, after a full investigation, Mr. Miller had been found guilty of improper and unprofessional conduct in his treatment of a woman of whose situation he took advantage. It is true that on objection the question was stricken out, but that did not strike out the effect. It was stricken from the record, but not from the minds of the jurors. The mere asking of this question constitutes reversible error.

As other questions presented by the record are not likely to arise on a second trial, it is not necessary to discuss them. The judgment is reversed, and a new trial granted. The plaintiff will have costs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.