G. B. BARRINGTON ET AL V. CLARENCE L. DUNCAN ET AL.

No. 8024. Decided March 3, 1943.
(169 S. W., 2d Series, 462.)

*A. R. Rucks,* of Angleton, *Ernest, Bondies & Flahive* and *Strasburger, Price Holland, Helton & Miller,* all of Dallas, for petitioners.

It was error for the trial court to refuse to grant defendants a new trial when it was shown that there was a misconduct of the jury in a discussion of the question in the jury room of whether defendants carried insurance. It was also error on the part of the Court of Civil Appeals to affirm such judgment. Galveston H. & S. A. v. Summers 278 S. W. 881; Texas & Pac. Ry. Co. v. Cassaday, 148 S. W. (2d) 471; Roberts v. Nowlin, 9 S. W. (2d) 69.

*Carlos Masterson* and *Sewell, Taylor, Morris & Connally,* all of Houston, for respondents.

The trial court properly refused to grant a new trial because it was shown that there was only a mere reference to the question of insurance and that two of the jurors promptly rebuked the one who made it, and there was no showing that said remark resulted in an injury. Monkey Grip Rubber Co. v. Walton, 122 Texas 185, 53 S. W. (2d) 770; Mecom v. LeBlanc, 140 S. W. (2d) 915; Yellow Cab Co. v. Word, 125 S. W. (2d) 1050.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Brazoria County, Texas, by C. L. Duncan against G. B. and Gus Barrington, a partnership composed of the two Barringtons just named, doing business under the trade name of Barrington Truck Lines, to recover damages for the personal injuries alleged to have been received by Duncan as the result of a collision between a truck driven by Duncan and a truck owned by the Barringtons and driven by Gus Barrington. The collision occurred in the nighttime on a public highway in Brazoria County, Texas. Duncan's employer carried compensation insurance in Texas Employers' Insurance Association. Such insurer paid compensation to Duncan and, as it had a right to do, intervened in this suit to have the amount so paid returned to it out of any recovery awarded to Duncan against the Barringtons. The Barringtons answered, defending against the cause of action alleged by Duncan. We will not detail the pleadings of any of the parties. It is enough to say that we treat all pleadings as sufficient to raise the questions of law which we shall discuss.

The case was submitted to a jury in the district court on special issues. Based on the answers of the jury to such issues, the district court entered judgment for Duncan against the Barringtons for $10,319.50. The judgment provided that the Texas Employers' Insurance Association should benefit to the extent of $1,535.33 out of Duncan's recovery. The jury fixed Duncan's damages at $10,000.00. The additional $319.50 included in the judgment involves the matter of Duncan's treatment, paid out by the Insurance Association. This item is not in the jury's verdict.

In their motion for new trial the Barringtons contended that the jury was guilty of misconduct while considering its verdict, in that several members thereof mentioned and discussed the fact that they, the Barringtons, carried insurance, which protected them against any judgment that might be awarded Duncan in this suit. The trial court heard evidence on the question of jury misconduct, and at the close of such hearing overruled the Barringtons' motion for new trial. No findings of fact or conclusions of law on the issue of misconduct were filed by the trial court, and none were requested.

Before proceeding further, we deem it necessary to make a statement of the evidence heard on the issue of misconduct.

On such issue four of the jurors who served in the trial of this case testified. These were jurors Goodman, McDaniels, Damon and Engberg.

The juror Goodman in substance testified: That the question of insurance was mentioned but not discussed; that the specific amount of $10,000.00 of insurance was mentioned; that the question of insurance was mentioned two or three times; that one juror stated that trucks of the nature of the Barrington's trucks, under the law, had to have insurance; that each time insurance was mentioned some other juror would say that insurance should not be mentioned or considered; and that such matters happened before the jury had agreed on a verdict.

The juror McDaniels in substance testified: That during the time the jury was deliberating on its verdict it was mentioned and there was a discussion with reference to whether or not the Barringtons' truck had to have insurance on it to operate; that there was a mention made of $10,000.00 insurance on the Barringtons' truck; that it was mentioned that the Barringtons had to have insurance in order to operate a truck of that kind, and that they carried liability insurance; and that when these matters were mentioned some other juror would admonish them that the jury had nothing to do with insurance, and should not consider it.

The juror Damon in substance testified: That one of the jurors brought up the subject as to whether or not the Barringtons had insurance; that Damon said, "we have nothing offered in this case at all as evidence as to whether he did or did not have insurance"; that some juror said, "I wonder if they have got insurance?"; that this juror headed him off because there was nothing offered as evidence as to whether he did or did not have insurance; that Damon did not know whether the amount of insurance was mentioned, but one juror said, "Anybody that has a truck is bound to have insurance." The substance of Damon's testimony is that one juror stated that he wondered if the Barringtons had insurance; that another juror stated that anybody who has trucks has to have insurance, and that he, Damon, stopped the discussion by stating that the jury had no evidence before it as to insurance, and should not consider it.

The juror Engberg in substance testified: That while the jury was considering its verdict one of the jurors asked if the

Barringtons carried insurance, and another juror, who was himself a truck driver, said, "Yes, he had to have insurance before he could get a permit to operate as a public carrier"; that when such statement was made he, Engberg, told them the jury did not need to discuss that, that it was none of their business whether he carried insurance or not; that said admonition was given promptly, and that the juror Damon also gave the same admonition.

The jury fixed Duncan's damages at $10,000.00. From the very nature of Duncan's injuries, the amount of his damages was unliquidated. The testimony as to the extent and seriousness of Duncan's injuries was sharply conflicting. According to Duncan's evidence, he was very seriously injured, and such injuries are of a permanent nature, and will greatly reduce his future earning capacity. According to the evidence offered by the Barringtons, Duncan's injuries will cause only ten per cent. permanent disability, and he will recover in a few months so that he can again do heavy work. It was shown that Duncan settled with the compensation insurance company for a lump sum of only $1,535.73, and this sum included $319.50 for treatment. His compensation rate of pay seems to have been $14.71. Also the evidence was such that the jury could have returned a verdict that would have called for a judgment for the Barringtons.

The Barringtons contend that the above facts present such jury misconduct as calls for a reversal of this judgment. This trial was had after the effective date of our present Texas Rules of Civil Procedure. This appeal must therefore be governed by such rules.

■ Under the decisions of this Court defining reversible error, as applied to jury misconduct in trials had before the effective date of our new Texas Rules of Civil Procedure, it was held that if the members of the reviewing court had a reasonable doubt as to whether or not jury misconduct, once established, had resulted in injury to the complaining party, reversal must follow. Such, however, is not the rule as applied to cases tried subsequent to the effective date of our present rules. As to such cases, the question of reversible error must be determined under the provisions of Rule 327. Such rule reads as follows:

"Rule 327. For Misconduct.—Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

A reading of the above rule will disclose that its effect is to abolish the prior rule of reasonable doubt, and substitute therefor a rule which imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him. If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that questions should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court. Under the above-quoted rule both the trial and reviewing courts have the right to view the matter in the light of the entire record. By the entire record we mean the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury. Of course, it is never permissible to allow a juror to preserve or destroy his verdict by testifying to the menal processes by which he reached the same, and this rule is not altered in the lease by Rule 327, supra. Sproles Motor Freight Lines v. Long, 140 Texas 494, 168 S. W. (2d) 642.

When we come to examine this record touching the issue of jury misconduct, we find that misconduct was established as a matter of law. Stated in another way, the fact that misconduct occurred was conclusively shown. All the jurors who testified gave testimony showing that the question of insurance was mentioned while the jury was deliberating on its verdict. This constituted misconduct as a matter of law. It follows that the only question left for this Court to decide is whether, under Rule 327, supra, the misconduct in this instance is of such a nature as to require a reversal of the judgment of the two

516

lower courts. To our minds there is no escape from the conclusion that it is.

■ It is shown that the jury was told by one of its members, who was himself a truck driver, that the Barringtons had to have insurance in order to get a permit to operate their trucks, and the amount of $10,000.00 was mentioned. The verdict was for exactly $10,000.00. The evidence is such that the jury could have returned a verdict which would have resulted in a judgment for the Barringtons. Also, the evidence is such that the jury could have returned a verdict fixing Duncan's damages at a smaller amount than $10,000.00. To tell the jury that the Barringtons had to have insurance in order to get a permit to operate their trucks was tantamount to giving evidence in the jury room that it was a fact that the Barringtons did have insurance. This Court takes judicial knowledge of the fact that a jury is more apt to render a judgment against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance. Kuntz z. Spence (Com. App.), 67 S. W. (2d) 254. Certainly, under the record we have recited, it ought to be held that the defendant has shown probable injury.

The application for the writ contains other points which will probably not occur on another trial. We therefore pretermit any discussion thereof.

Because of the misconduct of the jury in this instance, the judgments of the Court of Civil Appeals and district court are both reversed, and this cause is remanded to the district court for a new trial.

Opinion delivered March 3, 1943.