**Willie Mae LANDS et al., Appellants,**

v.

**YORK OIL CORPORATION, Appellee.**

No. 12814.

Court of Civil Appeals of Texas.

San Antonio.

April 27, 1955.

Rehearing Denied June 22, 1955.

Kirkham & Graham, Corpus Christi, Grover D. Edgar, Victoria, for appellants.

Keys, Russell, Keys & Watson, Corpus Christi, Stofer, Proctor, Houchins & Anderson, Victoria, for appellee.

NORVELL, Justice.

We have concluded that the judgment rendered in this cause must be reversed because of the improper discussion of the question of whether appellee carried automobile liability insurance. In view of another trial, we will refrain from discussing the evidence in more detail than is required by the injunction to determine the issue of probable injury "from the evidence both on the hearing of the motion [for new trial] and the trial of the case and from the record as a whole". Rule 327, Texas Rules of Civil Procedure.

This action resulted from an automobile collision which occurred on August 8, 1953, on U. S. Highway No. 87 in Victoria County, Texas, between a gasoline truck owned by appellee, York Oil Corporation, and a Studebaker automobile being driven by Winnie Faye Denman in which Willie Mae Lands was riding as a passenger. Winnie Faye Denman was killed in the accident and her surviving parents, Robert Denman and Cora Ellen Denman, brought suit for her death, which was consolidated with one instituted by Willie Mae Lands. Judgment below was for York Oil Corporation.

At the time of the collision the Studebaker automobile was on its proper side of the highway and numerous issues were submitted relating to negligent acts alleged to have been committed by George Eller, the appellee's truck driver, who was also killed in the collision. The principal defensive theory suggested was that the collision was caused by the action of the driver of a third automobile, described as an old model car, the make and driver of which were not identified by the evidence. The jury's findings were in the main favorable to the defendant and were substantially as follows:

That George Eller, the truck driver, was not operating the truck at an excessive speed; that he was keeping a proper lookout; that he made a proper application of his brakes; that he did not leave the paved portion of the highway; that he did not follow more closely behind an old model car than he should have; that he was not negligent in failing to keep his truck on its own righthand side of the highway; that he failed to maintain proper control of his truck, but that such failure was not a proximate cause of the collision; that the driver of the old model car, heretofore mentioned, suddenly and unexpectedly pulled out into the main traveled portion of the highway in front of the gasoline truck; that such action on the part of said driver was the sole proximate cause of the collision; that Eller, the truck driver, was acting in an emergency, during which he exercised ordinary care, and that the collision was an unavoidable accident. The damage issue was answered by the jury in the sum of $25,000.

Although appellants assert that it appears conclusively from the evidence that Eller's failure to keep the truck under proper control (as found by the jury) was a proximate cause of the collision, they do not contend that judgment should here be rendered in their favor. For our purposes it is sufficient to say that the issues relating to Eller's alleged negligence presented "close questions," in that jury findings favorable to appellants on a number of them would have been amply supported by the evidence.

We think it definitely established by the evidence adduced upon the motion for new trial, that the matter of liability insurance was discussed by the jury during its deliberations. It is well settled that the question of whether or not alleged actions or occurrences of misconduct actually took place in the jury room, is one of fact for the trial court to be determined from the evidence, as any other question of fact. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464. Where there are conflicts in the testimony, this Court will accept the version supporting the trial court's ruling, but, of course, neither this Court nor the court below is authorized to disregard positive, uncontradicted and unimpeached testimony. St. Louis Southwestern R. Co. of Texas v. Lewis, Tex.Com.App., 5 S.W.2d 765.

The appellants called three former jurors as witnesses. Two of them in the main support appellants' claim of jury misconduct. The third, as well as the witness called by appellee, adds very little to the recitals of the other two. Their testimony, however, will be discussed with reference to the matter of contradiction.

Appellants' first witness, Hambleton, testified that, "There was some discussion of it (insurance). We talked about it and some of them asked whether there was any insurance. * * * There were questions asked whether there was insurance or not. * * * Some of them felt like maybe there wasn't any insurance since it wasn't brought out, they didn't know; some of them felt like they did have insurance. * * * There was some discussion about it (the amount of insurance Mr. York carried) and some of them seemed to think that or at least talked about maybe he had enough and maybe he didn't, but seemed to think he did. * * * Some of them said there wasn't any insurance mentioned (in the evidence, apparently) and said we don't have any way of knowing whether there was any insurance or not, and some said, maybe suppose he didn't have any insurance, well the damages would have to be paid by York Oil Corporation or Mr. York, but most of them seemed to think he had insurance."

In answer to an inquiry as to what stage of the deliberations these discussions of insurance occurred, Hambleton testified as follows: "Well, I think right when we went up there (to the jury room) there was some discussion about it and at different times whenever we would run across some questions that would kind of 'ball' us up, well there would be some talk about insurance along at different times." On cross-examination, the witness was questioned as to the jury's becoming "balled up" on certain questions and his answers refuted the suggestion that insurance was not discussed prior to the unavoidable accident issue, which in sequence came near the end of the list of special issues. He said, "I don't know. Several of them (the special issues) was—kind of had us confused. We had a pretty hard time all the way through them." He also later stated on re-direct examination that, "It (the matter of insurance) was discussed off and on at different times. I just don't know how many, but when we would get to different issues, well, it would be brought up about the insurance, how much insurance, and it seemed like different issues would reflect back to the insurance some way or another, but I don't know just how many times, but at different times. * * *"

This witness also testified that even after the verdict had been completed and the amount of damages arrived at, one of the jurors said, "well maybe we should write across the issue that if there is insurance that it should be paid from the insurance on it." He later testified that he didn't remember whether "he (the juror making the suggestion) said, 'if' he had insurance or whether he said 'if' there was any money to be paid, it should be paid from the insurance." While this remark was made after the questions were answered, and of itself could not vitiate the verdict, it does throw some light upon the prior deliberations of the jury.

The witness Dearman testified that, "it (insurance) was discussed, if he (York) had or didn't have (any). * * * It was the talk of whether he had insurance why

the Insurance Company wasn't being sued. * * * It was discussed if he had or didn't have insurance. I myself, I said that I had to have insurance when I worked for an oil company, of fifty and a hundred thousand."

As to the relative time and extent of the discussion of insurance, there is some confusion in Dearman's testimony. He first testified that, "As far as I can remember, it was discussed, I would say, 50 per cent of the questions that were answered about insurance and at the end what money figures and, all that they would, arrive at." On cross-examination, he apparently limited the discussion of insurance to the unavoidable accident and amount of damage issues. Still later he testified that he "would say, insurance (was) discussed in 50 per cent of the time that we was in the jury room." Afterwards he requested leave to explain what he meant in his own words and testified that, "According to your issues and so forth on there, I would say that the time we was in the jury room that 50 per cent of the time we talked about insurance. I mean —I said while ago that issue where the unavoidable accident (was) where the insurance came in, but it came in before that question. It was talked about before that and then when we got to that then it was really talked about 50 per cent."

The witness Dentler testified that there was some discussion of insurance, but no one seemed to know whether York had insurance, so the matter was dropped and that was all he could tell the court. He stated that he was sitting pretty close to the foreman during the jury's deliberations.

The witness Hauschild, called as a witness by appellee, testified that he was the foreman of the jury; that he did not "remember particularly" any discussion about York's having insurance.

■ The only way in which a witness' testimony as to an action taken in the jury room may be contradicted is by another witness' testimony that he did not see or hear the reputed action, coupled with some showing that had such an action taken place, he would probably have seen or heard it.

Mr. Hauschild testified that he sat at one end of the table, while Hambleton testified that he sat at the opposite end. When asked specifically about a juror making the suggestion that there be written across the proviso that "this verdict should be paid only if there was insurance," Hauschild testified that he did not recall it, and then explained that, "they were talking pretty much down at the other end"; that two questions were being discussed and there were. lots of discussions going on and "I wasn't particularly listening to them." Mr. Hauschild's testimony was very brief upon the question of the discussion of insurance and may be considered as contradicting the witness Dearman somewhat as to the extent and duration of the insurance discussion.

We think it was shown that some of the members of the jury discussed and speculated upon whether or not appellee York had insurance. This discussion amounted to more than a stated conclusion that he did carry insurance. Various statements were made from which jurors might infer that there was no insurance... Other statements were made which, if believed, would support a contrary conclusion. This wholly immaterial matter was made a subject of improper speculation. It further appears that some of these discussions took place while the jury was deliberating upon the liability issues. We do not agree with appellee that Dearman's testimony can be construed as supporting a fact finding that the matter of insurance was not discussed until the unavoidable accident issue was considered, contrary to the version given by Hambleton. However that may be, the unavoidable accident issue, by reason of the definition of the term, raised again the question of negligence on the part of the driver of appellee's truck.

■ We conclude that such discussion was prejudicial to appellants. There was speculation, both pro and con, on the question of insurance. It does not appear that the discussion of insurance was merely casual, and there is no evidence of a timely rebuke or warning having been given by the foreman or any other member of the

jury. In Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962, it was held to be prejudicial error for a jury to receive evidence that one of the parties to the action did not carry insurance. The Supreme Court, after citing with approval the case of Piechuck v. Magusiak, 82 N.H. 429, 135 A. 534, said:

"Obviously, if proof, *as an independent fact,* that a defendant has insurance is improper because it has no bearing on the independent questions of negligence and damages and is calculated to injure defendant, then proof that defendant has no protecting insurance is calculated for the same reason to injure plaintiff. The answer in either case is that the proof should not be heard because it is irrelevant and its consideration by the jury is calculated to work injury. See in this connection Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462; Brown v. Murphy Transfer & Storage Co., 190 Minn. 81, 251 N.W. 5, and Kerr v. National Fulton Brass Mfg. Co., 155 Mich. 191, 118 N.W. 925." [142 Tex. 152, 177 S.W.2d 964.]

The cited case involved the admission of improper evidence before the jury under the ruling of the trial judge. This factor may often be a distinguishing feature between cases of the receiving of improper testimony in the court room and those involving jury misconduct. However, there are similarities, as is evidenced by the citation of Barrington v. Duncan, a leading case on jury misconduct involving the discussion of insurance.

It should also be noted that in Rojas v. Vuocolo the Court, in determining whether or not the error was reversible, applied the rule of probable harm, which is made applicable to jury misconduct by Rule No. 327, and held that the error necessitated a reversal of the judgment. See, also, Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811;

Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; Gillespie v. Rossi, Tex.Civ.App., 238 S.W.2d 547; Eichelberger v. Rankin, Tex. Civ.App., 278 S.W.2d 278.

■■ In view of another trial, we call attention to the general rule that where the direct testimony of eyewitnesses to the collision are available, 5 Am.Jur 845, Automobiles, § 618, evidence tending to show that a party charged with negligence usually or habitually used or failed to use proper care in operating a motor vehicle is inadmissible. Missouri, K. & T. Ry. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568; 61 C.J.S., Motor Vehicles, § 515, p. 245; 9C Blashfield, Cyclopedia of Automobile Law and Practice, 296, § 6190. The rule does not preclude proof of the nature of the operation of the vehicle shortly before the collision, nor does it operate to exclude evidence tending to rebut an inference of inability to properly operate a motor vehicle because of physical defect. It was suggested by the evidence in this case that Eller, the driver of appellee's truck, had a crippled hand. It was proper to show that this did not interfere with his operation of the truck. However, this situation did not render admissible evidence that he was habitually a careful driver. In view of our ruling upon the issue of jury misconduct, it is unnecessary to determine whether or not appellants had waived their objection to such evidence, or if its admission was of such prejudicial nature as to call for a reversal of the judgment. Rule 434. Other asserted errors discussed in the briefs need not and probably will not occur upon another trial and for that reason further discussion is pretermitted.

Being of the opinion that under the authorities probable injury to appellants was shown, as required by Rule 327, because of the improper discussion of liability insurance, the judgment of the trial court is reversed and the cause remanded for another trial.