**KIRBY PETROLEUM COMPANY,**
Appellant,

v.

**Mrs. Mildred S. JONES et al., Appellees.**

No. 55.

Court of Civil Appeals of Texas.

Tyler.

Oct. 8, 1964.

Rehearing Denied Nov. 12, 1964.

B. Jeff Crane, Jr., and Raybourne Thompson, Jr., Vinson, Elkins, Weems & Searls, Houston, for appellant.

W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellees.

MOORE, Justice.

This is a suit under the Workmen's Compensation Act instituted by Mrs. Mildred

Jones and her two daughters, Mrs. Jo Frances Jones Chastain and Virginia Merrill Jones, against United States Fidelity & Guaranty Company, to set aside an award of the Industrial Accident Board denying them compensation benefits by reason of the death of John Quincy Jones, their husband and father, respectively. In addition to the suit against the compensation insurance carrier, Plaintiffs also joined the employer, Kirby Petroleum Company, as a party Defendant, and sought damages against Kirby for wrongful death. Plaintiffs alleged that John Quincy Jones was an employee of Kirby Petroleum Company and met his death while engaged in the course and scope of his employment as an oil field pumper for Kirby Petroleum Company, and was thus entitled to death benefits against Defendant, United States Fidelity & Guaranty Company, by reason of the Workmen's Compensation Act of Texas, and alleged that manifest hardship and injustice would result if the compensation was not paid in a lump sum. In the alternative, Plaintiffs alleged that if in the event it was found that the deceased, John Quincy Jones, was not an employee of Kirby Petroleum Company at the time of his injuries, then in such event, he was an independent contractor and that his death was brought about by the negligence of Kirby Petroleum Company thus entitling Plaintiffs to damages under the Wrongful Death Act.

Defendant, United States Fidelity & Guaranty Company, denied the allegations of Plaintiffs' petition and specially denied that the deceased was an employee of Kirby Petroleum Company, and further plead that by electing to sue Kirby Petroleum Company under the Wrongful Death Act, Plaintiffs waived the benefits available to them by virtue of the Workmen's Compensation Law. Defendant, Kirby Petroleum Company, denied generally the allegations of the Plaintiffs' petition, and set up the fact that it carried Workmen's Compensation Insurance and further plead contributory negligence an assumed risk on the part of the deceased, as well as unavoidable accident.

Prior to trial, Defendant Kirby Petroleum Company moved for a severance, alleging that the cause of action against it was improperly joined with the cause of action asserted against United States Fidelity & Guaranty Company, and further alleging that such improper joinder was prejudicial to the interest of Kirby in that Kirby could not receive a fair trial because the question of insurance coverage would be before the jury and would thereby be prejudicial and inflammatory to the rights of Kirby. The motion was overruled, and the trial proceeded against both Kirby and the above-named compensation insurance carrier.

Trial was before the jury. In response to the following numbered Special Issues, the jury found: (1) that the connection between the brake rod leading to the brake handle and the eccentric on the pumping unit was defective; (2) that Kirby failed to make such an inspection for the defective condition as would have been made by a reasonably prudent oil production company under the same or similar circumstances; (3) that such failure was a proximate cause of the fatal injuries; (4) that immediately prior to the fatal injuries, deceased did not actually know of the condition of the connection of the brake rod leading to the brake handle and the eccentric; (5) that deceased did not actually appreciate the danger incident to working around and about the connection between the brake rod, leading to the brake handle and eccentric; (6) that deceased failed to determine that a cotter pin was missing from the braking mechanism; (7) that such failure was not negligence; (9) that deceased did not fail to make such an inspection of the pumping unit as would have been made by a person of ordinary prudence in the exercise of ordinary care; (11) that deceased was not aware that the cotter pin was missing from the braking mechanism; (16) that in attempting to change the tailbearing of the pumping unit

in question, without assistance, deceased did not fail to exercise that degree of care which would have been exercised by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances; (18) that the occurrence was not the result of an unavoidable accident; (19) that the damages sustained for the pecuniary loss by Mrs. Mildred Jones was $80,000.00; (20) that the damages sustained for the pecuniary loss by Virginia Merrill Jones was $15,000.00; (21) that the damages sustained for pecuniary loss sustained by Mrs. Jo Frances Jones Chastain was $5,000.00.

Immediately following the foregoing Special Issues, the Court in its charge instructed the jury as follows:

"If you have answered either Special Issue No. 1, No. 2, or No. 3, or either of them, 'We do not' or if you have answered Special Issue No. 5, 'He did actually appreciate,' or Special Issue No. 18, 'It was an unavoidable accident,' or Special Issues No. 8, 10, 14 or 17 or 15, 'We do,' and only in either of the said events, then answer: * * *".

Then followed numerous Special Issues dealing with the claim for Workmen's Compensation Insurance, inquiring as to (1) whether deceased was an employee of Kirby; (2) whether good cause existed in failing to timely file a claim for compensation; (3) whether manifest hardship and injustice would result if compensation was not paid in a lump sum. In view of the above instruction by the Court, and because of the jury's answers to the Wrongful Death Issues in a manner favorable to the Plaintiffs, the jury, in accordance with the Court's instruction, was not required and the jury did not, therefore, answer any of the issues dealing with the claim for Workmen's Compensation.

Based upon these findings, the Court rendered judgment for Plaintiffs against Kirby, and rendered a take-nothing judgment against Plaintiffs in their suit against United States Fidelity & Guaranty Company, to which judgment Kirby Petroleum Company has perfected this appeal.

The evidence reveals that under the terms of a written contract of employment between Jones and Kirby, Jones agreed to operate Kirby's wells as an independent contractor, agreeing to perform all duties customarily required in the flowing and pumping of the wells, adjusting chokes and flow devices, gauging tanks, witnessing runs to transporters and to prepare and mail daily reports of production to such persons and firms as Kirby might designate. Kirby agreed to make all repairs to the equipment necessary to the operation of production, and Jones agreed to make such minor mechanical adjustments or other repairs as are ordinarily performed by a pumper in the course of his regular duties, which would be paid for by Kirby, but under the agreement, Jones was required to notify Kirby of the need of repairs. The contract further required Jones to carry public liability insurance on his automobile and to carry Workmen's Compensation on any of his employees employed to do any work on the lease, and required him to comply with the Fair Labor Standards Act, Social Security laws and all other State and Federal laws.

The undisputed evidence shows that on April 21, 1961, deceased met his death when a counter-weight on a pumping unit located on Well No. 2 of the Eyers Lease fell on him. A small gravity motor was used for propelling the pumping unit. The pump was equipped with a large metal counterbalance which revolved 360 degrees vertically on the shaft propelled by the motor and, by the force of gravity, would ordinarily revolve downward to its lowest position when the motor was turned off. In order to hold the counter-balance at any other position, it was necessary to apply a handbrake. This brake was simply a friction device which used leverage and a rod which bore most of the force in holding the counter-balance in an upward or horizontal position. The brake handle was

in turn connected to an eccentric which was connected to a rod allowing the leverage force to be applied. The rod was connected to the eccentric by the use of a cotter pin in such a manner that the entire braking mechanism to some extent depended upon the cotter pin. From the testimony, it can be adduced that some time prior to 9:00 p.m. on April 21, 1961, deceased, while acting in his capacity as a "contract pumper" for Well No. 2 located on the Eyers Lease, had gone to Well No. 2 and was attempting to change a tailbearing in the pumping unit and was crushed to death by reason of the counter-weight on the pumping unit having revolved upon its axis and having come down upon him. At the time his body was found, he appeared to be in a squatting position with the counter-balance resting upon the upper portion of his body, thus crushing his body against the base of the pumping unit. The cotter pin which held the brake rod was missing, thereby rendering the brake inoperative and thus allowing the counter-balance to revolve downward upon him. The cotter pin was never found nor is there any explanation in the testimony as to what happened to it or how long it had been missing.

Plaintiffs produced evidence showing that Jones had worked for Defendant Kirby for six years as a pumper immediately preceding his death; that during such time Kirby had made no material change in the pumping equipment used, nor during such time had Kirby caused any general inspection to be made of its equipment or the braking mechanisms on the pumping units nor had Kirby made any repairs thereon. Plaintiffs further produce testimony showing that the counter-balance would not have fallen if the brake rod had not been disconnected, and the brake rod would not have become disconnected had the cotter pin not been missing; that the cotter pin would not have come out of the brake rod if it had been properly installed unless it had broken or had been cut out; that the fact that the cotter pin was missing could have resulted

from either long use causing it to wear in two, or it could have broken due to its weakness from crystallization or strain, and that such a cotter pin would not ordinarily fall out of its place from pressure or strain on the brake rod connection unless the pin had been defective. It was further shown that the connection of the rod and the eccentric was such that same could have held together for some time because of the tension of the joint without the presence of a cotter pin. At the time of the death of the deceased, supervision of the Lease was being exercised by Kirby from its home office in Oklahoma, a distance of approximately 650 miles from the Eyers Lease. Kirby had never made any inspection of the brake mechanism, nor had deceased been employed by Kirby to do safety inspection work in addition to his duty as a pumper.

By the first Point of Error, Appellant Kirby contends that the Trial Court committed error in refusing to grant its Motion for Severance and thereby requiring the compensation suit against the insurance carrier and the damage suit against it to be tried simultaneously, contending that such joinder is prohibited by Section 6a of Article 8307, Vernon's Ann.Tex.Civ.St., which reads in part as follows:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employé may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. * * *"

Appellees counter this contention by pointing out that "The parties originally joined in this case do not fall within the purview of Article 8307, Section 6a, Civil Statutes of Texas, as contended by Appel-

lant. Section 6a specifically has application only in situations where a subrogation right arises in behalf of an insurance carrier for a compensable injury negligently caused by the third party. No subrogation interest can inure against a negligent employer who has subscribed to the act. The language of Section 6a clearly limits the application of the section to situations: 'Where the injury (is one) for which compensation is payable under the law was caused under circumstances creating a legal liability in some person other than the subscriber * * *.' "

Appellees further contend that since the compensation carrier has no right of subrogation against the subscriber as distinguished from some third person, the joinder of the employer (subscriber) is not prohibited but is authorized by Rule 51, Texas Rules of Civil Procedure, to prevent a multiplicity of suits.

While it may be true that Section 6a of Article 8307 does not specifically prohibit the joinder of an employer-subscriber in a suit for damages wherein the employee also sues for Workmen's Compensation benefits, we are of the opinion that under the general rules of practice in this state there was a misjoinder of the two causes in this case. Not only is Appellees' compensation suit dependent upon the statutes, but the measure of damages sought by reason thereof is purely statutory. The measure of damages in Appellees' compensation suit and the measure of damages in the Appellees' damage suit are entirely different from each other, and depend in a great measure on different facts. The defense that deceased was an independent contractor and the defense that the injuries were not received while deceased was working in the course and scope of his employment with Kirby are defenses which were available to the insurance carrier, but would not be defenses which would be available to Appellant Kirby; likewise, the common law defenses of assumed risk, contributory negligence and unavoidable accident available to Kirby could not be urged by the compensation insurance carrier as a defense to the Appellees' suit. Furthermore, evidence which would be admissible and competent in the Appellees' compensation suit, especially on their claim that manifest hardship and injustice would result to them unless they were paid the statutory damages in the lump sum would not only be incompetent, but if admitted in Appellees' suit against the compensation insurance carrier would be reversable error as to Kirby. As pointed out before, Appellees in their suit against the compensation carrier sought a lump sum settlement and evidence was introduced for the purpose of showing that manifest hardship and injustice would result to the Appellees unless the compensation was paid in a lump sum. To hold that a suit against a compensation carrier for Workmen's Compensation Insurance, and a suit against the employer for damages can be tried at the same time would be to ignore the simple facts of the case. It would require the Court throughout the trial to instruct the jury that certain portions of the evidence were admissible as against one Defendant, while at the same time the same evidence was not admissible as against the other Defendant. It would allow the claimant, as they did in this case, to prove all the transactions, dealings, conversations and relationships with an insurance company without being required to confine such evidence to the compensation insurance carrier involved in the case, and the Court would be helpless in instructing the jury in regard to insurance coverage for fear that any instruction would, in effect, be advising the jury as to whether the employer did or did not carry liability insurance. This cause was styled throughout the pleadings, as well as in the Court's charge, as Mrs. Mildred S. Jones, et al vs. United States Fidelity & Guaranty Company, et al. We believe that the trial of the Appellees' suit against the compensation insurance carrier, and the trial of their suit against the employer, if joined, would necessarily result in such confusion in the minds of the jury as to the issues in both suits as to render a joinder of the two

suits impractical, even with our liberal doctrine in reference to the joinder of causes of action. Fidelity Union Casualty Co. v. Riley (Tex.Civ.App.), 26 S.W.2d 682. In reaching this conclusion, we are not unmindful of the holdings in the cases of Southern Casualty Co. v. Freeman (Tex. Com.App.), 24 S.W.2d 370 and Hartford Accident & Indemnity Co. v. Christensen (Tex.Civ.App.), 223 S.W.2d 45, wherein it is indicated that an injured employee in bringing suit for Workmen's Compensation Insurance might also join his employer in a common law action for damages.

However, in each of these cases, it will be noted that the point involved here was not passed upon in that the employer was exonerated and was not in either of those cases a party before the Appellate Court and therefore made no complaint, and the error, if any, as against the compensation carrier was harmless. In the case at bar, however, the employer, as distinguished from the compensation insurance carrier, is before the Court complaining of the action of the Trial Court and in our opinion has demonstrated harmful error. To hold to the contrary would be to say that in all future cases of this type, the Trial Court would be permitted in his discretion to allow both the compensation carrier and the employer to be joined in one action, and that the admission of evidence allowable under the issue of manifest hardship and injustice would either be admissible against the employer or would be such that the Trial Court could erase the same from the minds of the jury by an instruction. Such evidence would, in our opinion, be wholly inadmissible and prejudicial against the employer, while to say that an instruction could erase the prejudicial effect of such testimony upon the minds of the jury would be entirely unrealistic.

There is yet another reason why we believe the Trial Court should have granted the Motion for Severance. Prior to the trial of this cause, Plaintiffs requested Defendant Kirby to admit that the deceased was an independent contractor. Kirby ad-

mitted this to be a fact, thus admitting Plaintiffs' right to bring suit in a common law action under the Wrongful Death Statute. Kirby did not plead that deceased was an employee, nor did Kirby seek any of the protective benefits afforded by the Workmen's Compensation Law. Therefore, as between the Plaintiffs and Kirby, any question involved in the Plaintiffs' suit against the compensation insurance carrier became completely irrelevant and immaterial. We believe the situation to be somewhat analogous to that presented in Hudson Underwriters Agency of Franklin Fire Ins. Co. v. Ablon (Tex.Civ.App.), 203 S.W.2d 584, wherein the Court quoted the following language of the Supreme Court:

" 'In determining whether the action of the trial court in the present case in admitting the testimony objected to by the state was prejudicial, we are persuaded by the fact that any testimony which is immaterial, and tends to becloud the issues and confuse and mislead the jury, is prejudicial in its effect. Such was the holding in Barrington et al. v. Duncan, 140 Tex. 510, 169 S.W.2d 462, and Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962. It is ordinarily error for plaintiff to mention the fact in the presence of the jury that the defendant is insured against the liability which he is seeking to establish, or that he has no protecting insurance. *For the same reason it is error to refer to the fact that the plaintiff is protected by some form of insurance.* It is improper in either case because such fact is irrelevant and immaterial and is calculated to work injury. Rojas v. Vuocolo, and cases there cited.' (Italics ours.)" Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811, 813. See, also, Johnson v. Willoughby (Tex.Civ.App.), 183 S.W.2d 201, writ ref.; Foster v. Langston (Tex.Civ.App.), 170 S.W.2d 250.

Upon the question of harm, if indeed a showing of additional harm be necessary, we are of the opinion that harm has been

demonstrated by reason of the fact that the jury awarded one of the Appellees, Mrs. Jo Frances Jones Chastain, the sum of $5,000.00. The evidence shows that at the time of her father's death, she was 22 years of age, had been married for two years and had been living with her husband, who was a civil engineer. The only basis in the evidence upon which the verdict awarding her damages for a pecuniary loss is to be found in the following question and answer:

"Q   Even after you were married, did he financially assist you and your husband?

"A   Occasionally he would, yes."

■ Although we are keenly aware of the holding of the Supreme Court in Dennis v. Hulse, Tex., 362 S.W.2d 308, 309, holding that even though the record discloses that the question of insurance was improperly injected into the case, and even though such error was reasonably calculated to cause a miscarriage of justice, the party appealing must also show that it probably did cause the rendition of an improper judgment under rules 434 and 503, T.R.C.P., yet as we read the cases, the Supreme Court remains committed to the view that the Court will take judicial knowledge of the fact that a jury is more apt to render a judgment against a Defendant, and for a larger amount, if it knows that the Defendant is protected by insurance. Kuntz v. Spence (Tex.Com.App.), 67 S.W.2d 254; Barrington v. Duncan, supra.

Without arguing the question of whether or not Mrs. Chastain was entitled to damages for pecuniary loss, it appears to us that based upon this meager evidence, the jury in awarding this amount of damages demonstrated generosity, rather than basing their verdict upon the evidence, and that more likely than not the question of insurance, at least to some extent, was responsible for this portion of the verdict.

It is, therefore, our opinion that the Trial Court should have sustained the Motion for Severance filed by Kirby Petroleum Company, and should have ordered these two causes of action to be separately docketed and tried. Rule 174(b), T.R.C.P. Because of this procedural error, we feel that we have no alternative other than reverse and remand the cause for another trial. In view of this ruling, we defer discussion of the remaining Points of Error.

Reversed and remanded.