**P. T. WHITLOCK GAS & OIL, INC., et al.,**
**Appellants,**

**v.**

**Roland V. BROOKS et al., Appellees.**

**No. 16603.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 5, 1965.

Rehearing Denied Dec. 3, 1965.

Jackson, Walker, Winstead, Cantwell & Miller, Louis P. Bickel and Jack D. Sides, Jr., Dallas, for appellants.

Lyne, Blanchette, Smith & Shelton, George C. Dunlap and Searcy M. Ferguson, Jr., Dallas, for appellees.

BATEMAN, Justice.

The appellee Roland V. Brooks recovered a judgment for $15,000 as damages for personal injuries to his wife, Naomi, resulting from a collision between an automobile driven by her and a truck owned by P. T. Whitlock Gas & Oil, Inc. and driven by John W. Fitzgerald. The judgment was against the Whitlock company and its driver, Fitzgerald, both of whom appeal.[1]

By their first point of error on appeal they assert that the jury was an improperly constituted tribunal in that one of its members, Samuel A. Davis, was guilty of misconduct during the *voir dire* examination of the jury panel. It is contended that Davis concealed a personal injury claim he had previously had, and that if he had not done so appellants' counsel would have challenged him peremptorily. Rule 232, Vernon's Texas Rules of Civil Procedure.

On the *voir dire* examination counsel for appellants first asked the general question of the entire panel, whether any of them had had "a damage suit or a suit against another person, firm or corporation, which arose out of an automobile accident." A member of the panel (not Davis) spoke of having been sued "in an automobile accident," and the attorney asked him if he had had such a claim of his own, whether a lawsuit was involved or not. This was answered in the negative, and the attorney then asked this question:

"All right. This question—it isn't very well stated here—I want to find out from the members of the panel, and I will take it a row at a time, I believe we can do it a little bit faster, if any of them have had a claim against any other person, firm or corporation, such as this, or maybe an insurance company if it was an on the job accident, something like that, on account of being hurt whether it be on the job, on a train, a bus, or slip and fall in a store, or in an automobile accident, whether you had a claim, be there a lawyer employed, or not, or has a member of your immediate family had a claim, that is your husband, your wife, your children, your mother or father, or close friend, such as this. Mr. Mitchell has told us he was sued. I am actually inquiring on the other side of the proposition; anyone bring a claim, including a suit? Is there anyone in the front row including—"

It will be noted that no inquiry was made as to whether any member of the panel had been *injured,* but only as to whether he had had a *claim.* The juror Davis was in the first row and could hear the attorney. He said nothing and did not raise his hand. On the hearing of appellants' motion for new trial he testified that on April 17, 1964 he gave Liberty Mutual Insurance Company a release in connection with a back injury he received on June 3, 1963 while working for the Coca Cola Company; that he was treated for an injury but later

---

1. Brooks also sued as next friend of four minors who were passengers in the Brooks car. The jury found that none of these children was entitled to any damages; it was ordered that they take nothing; and they do not appeal. Hence, they will not be noticed further.

"they" decided it wasn't an injury but a congenital defect; that he never made a claim for any money, but the personnel manager and a representative of Liberty Mutual Insurance Company came to him and offered him $2,500 which he accepted and for which he gave the release. He stated that he did not remember the exact question asked by appellants' attorney, but understood that he was asking whether he (Davis) had ever been involved in a lawsuit "or charged with a felony." He also said that he believed in his own mind that he had never made a "claim" against anyone. He said he had never asserted a claim, or filed a lawsuit or hired a lawyer. He said that if he had been asked concerning his injuries he would have tried to answer the questions as truthfully as he knew how. He further said that he did not discuss his back condition or pain with the other jurors until after the verdict had been returned.

■ The trial judge heard Davis' testimony, and even interrogated him at some length himself, and then by overruling the motion for new trial impliedly found that the alleged misconduct did not occur. If the evidence thereon be viewed as conflicting, the finding of the trial judge is final and binding on us. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. But, as we read this record, there is no substantial conflict in the evidence. No direct or specific questions were asked this prospective juror individually regarding his past claim experience, and it is obvious that he had no clear understanding of the general question as applying to anything other than a positive demand for monetary compensation for an injury. He had made no such demand and therefore, in his own mind at least, had not had a "claim" against anyone. We think the trial court was entirely justified

in believing from the evidence that Davis did not understand the question as meaning what counsel for appellants doubtless understood it to mean. That being true, no misconduct was shown. Thompson v. Quarles, Tex.Civ.App., 297 S.W.2d 321, 325, wr. ref. n. r. e.; McCarthy Oil & Gas Corp. v. Cunningham, Tex.Civ.App., 255 S.W.2d 368, wr. ref. n. r. e.; Barron v. State, Tex.Civ.App., 378 S.W.2d 144, no wr. hist.

■ Moreover, it was shown that when all of the jurors wrote on separate pieces of paper the amounts they thought should be awarded for Mrs. Brooks' injuries Davis wrote "$5,000," being among the four who wrote the lowest amounts, and thereafter agreed on $15,000 as a compromise. This indicates to us that if any misconduct did occur in this respect appellants have not shown themselves to have been harmed by it. Rule 434, T.R.C.P.

Appellants' first point is overruled.

■ By their second point of error the appellants complain of the refusal of the trial court to submit three requested special issues inquiring as to whether Mrs. Brooks "suddenly and unexpectedly slowed the speed of her vehicle," and, if so, whether this was negligence and a proximate cause of the collision.[2]

The court submitted issues as to whether Mrs. Brooks brought the automobile which she was driving to a sudden stop and, if so, whether this was negligence and a proximate cause. The jury answered the first of these issues in the negative, and appellees maintain that this was the only issue of contributory negligence raised by the evidence. We agree with appellees.

The evidence shows that prior to the collision both vehicles were traveling north

2. The point of error does not actually specify the substance of any of the requested issues, but merely refers to them as "controverted ultimate fact issues," and is therefore too general to comply with Rule 418, T.R.C.P. However, a reading of the statement and argument under the point discloses to us the specific error complained of, and we therefore consider the point. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; Rule 422, T.R.C.P.

on Stemmons Expressway in the City of Dallas, Mrs. Brooks' car being in front of the truck, and that shortly after they entered upon the "exit road" leading into Commerce Street the truck collided with the automobile at or near its read end. Mrs. Brooks testified that as she approached the exit road she slowed down from approximately 35 miles per hour to around 20 or 25 miles per hour; that as she went down the exit road she had "made the curve and straightened up completely" when the truck hit them the first time, and that the truck hit them a second time.

The appellant Fitzgerald testified that he was driving a gasoline truck and was in the same lane and some 25 to 35 feet behind Mrs. Brooks as they approached the Commerce Street exit; that Mrs. Brooks couldn't make up her mind whether she wanted to make a right turn or go straight ahead and suddenly turned right at the Commerce Street exit and stopped, after which he "jumped the curb" with his tractor and his trailer "slid into her"; that he could see she was stopped before the collision, although her tail lights were not on; that when he noticed she had stopped he was about 35 feet behind her; that she was slowing up and then he was slowing up, "and all at once she pulled in there and stopped right at the exit."

Mrs. Brooks' daughter, Rosilind, 17, was a passenger in her mother's car and testified that before her mother turned into the exit she was going "about 30 miles an hour, maybe 35," and that she slowed down to about 20 miles an hour when she turned into the exit road, and was going between 15 and 20 miles an hour when she was hit.

Appellant Fitzgerald was recalled and testified: "Well, we started about the same time, I guess, or something like that, and when she made her turn, then she stopped right there in front of me, and I jumped the curb with my cab, and I pulled my trailer brakes down and my trailer slid

around into her." He then testified on cross-examination:

"Q. Mr. Fitzgerald, you just testified when Mr. Bickel asked you a question, he said she was either stopped or slowed, isn't that the question he asked you?

"A. She stopped.

"Q. She stopped. That is your testimony now?

"A. Yes, sir, she stopped."

■ As we read this testimony, it presents two conflicting versions of what Mrs. Brooks' car was doing at and immediately prior to the collision. The testimony of appellees' witnesses would indicate that it was being gradually slowed down from 30 or 35 miles per hour to 15 or 20 miles per hour as she made the turn into the exit road and that it was moving when hit by the truck. Appellants' evidence, however, indicated that it had been brought to a sudden stop prior to the collision. We find no evidence in the record, and our attention has been directed to none, to the effect that there was a sudden and unexpected slowing down of Mrs. Brooks' car. Appellants' version, that Mrs. Brooks brought her automobile to a sudden stop in the path of the following gasoline truck, was submitted to the jury and answered adversely to appellants. We are of the opinion that the requested special issues were not raised by the evidence and were properly refused. Appellants' second point is overruled.

By their third point of error the appellants complain that no special issue was submitted to the jury as to whether Mrs. Brooks sustained bodily injuries in the collision, and that the absence of this essential issue was called to the trial court's attention by appellants in their objections to the charge.

■ Of course, proof of such injury was essential to that part of appellees' case.

The burden was on Brooks to prove that his wife had been injured, and this question was put in issue by appellants' general denial. Rule 92, T.R.C.P.; Texas & Pacific Ry. Co. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528.

 It was also held in the Van Zandt case that, when there is a controverted issue of fact as to whether the plaintiff has been injured, it is not a sufficient submission of that ultimate and essential fact issue, over proper objection, to inquire whether a particular negligent act or omission was a proximate cause of the plaintiff's injuries, if any, or what amount of money will compensate the plaintiff for the injuries, if any, sustained by him; that in such cases the issue should be submitted directly and unequivocally inquiring as to whether injury was sustained; that to hold otherwise would be to deny the defendant the right of trial by jury guaranteed by Section 15 of Art. I of the Texas Constitution, Vernon's Ann.St. and that the mere denial of the right raises an inference of probable harm. In the light of these rules, we now examine the testimony in this case concerning Mrs. Brooks' alleged injuries to determine whether there was error in not submitting the issue.

 There was an abundance of testimony to the effect that Mrs. Brooks was injured, although all of it was testimony which the jury would have had a right to believe or not believe. The testimony of Mrs. Brooks and her husband as to her injuries was that of interested parties and merely raised the issue. The testimony of their married daughter, Mrs. Peterson, and two of the minor passengers in the car as to what they observed as to her physical condition was obviously based entirely on subjective symptoms, i. e., what Mrs. Brooks said and did to indicate pain and disability, and would likewise only serve to raise and support the issue, not determine it.

 The only medical testimony offered was that of Dr. P. M. DeCharles, who testified that in his opinion Mrs. Brooks' trouble with her back was due to an old degenerative disk syndrome and not caused by the accident in question, but that in his opinion her neck injuries were due to the accident. However, he further stated that he did not see any x-ray pictures of her taken immediately after the collision or any x-ray pictures taken prior to the collision and that he had seen similar neck injuries which were not caused by accident. All of the doctor's testimony was of course opinion evidence of an expert, which the jury had every right to believe but was not compelled to believe.

Mrs. Brooks testified that after the collision Mr. Fitzgerald walked over to her and asked if anybody was hurt, and she told him that she "had no idea." Mr. Fitzgerald testified that when he asked her if anybody was hurt she told him she didn't think anybody was hurt bad, that they were all "scared". She later told the investigating police officer that she intended to drive back to her home in Longview, Texas that same afternoon, but testified that after reaching Terrell, Texas some time after dark she decided to stay overnight, principally because of the fact that the tail lights on her automobile were not working. Mr. Brooks testified that she told him on the telephone that night that they were "bruised pretty bad" but that she believed she would be all right, that she was feeling pretty bad but wasn't "critical" and would be in the next day. Mrs. Brooks did not consult a physician concerning her alleged injuries until a week or a week and a half after the accident. She went to see Dr. Spaulding, her family physician, but only went to see him one time, after which she went to a chiropractor seven or eight times. She first called on Dr. DeCharles approximately five months after the collision.

 As pointed out in the Van Zandt case, it is not always necessary to submit the issue as to whether the plaintiff was in fact injured as a result of the accident in question, for in some cases the evidence is

undisputed. However, our study of the evidence in this case persuades us that the trial court erred in not submitting such an issue, and that appellants were thereby denied their constitutional right to a trial by jury of an essential element of appellees' case. Appellants' third point is sustained.

In their fourth and last point of error appellants charge jury misconduct and endeavor to demonstrate that in arriving at their finding of $15,000 damages for Mrs. Brooks' bodily injuries there was discussion of and inclusion in their answer six improper elements, to-wit: (1) attorney's fees, (2) automobile damage, (3) past and future doctor and medical expenses, (4) professional testifying fee of a medical witness, (5) income taxes and (6) liability insurance.

The juror Marinan Graham, produced by appellants, testified that all these matters were discussed and several of them taken into consideration in arriving at the sum awarded. She said that she took attorney's fees and automobile repair expenses into consideration and that other members of the jury stated that they were also taking them into consideration; that automobile damages were discussed by the jury and included in the amount awarded. She also said that an extra amount was included in the award because of the opinion of the jury that income taxes would have to be paid out of the amount awarded; also that past and future medical and doctors' expenses were discussed and included in the award, as well as the fee of Dr. DeCharles for testifying at the trial. She said that another juror, Mrs. Morris, brought up liability insurance and that it was "discussed pro and con."

The appellees then produced the testimony of the foreman, Frank T. Hearst, and jurors S. T. Bridges, Sam A. Davis and John E. Riker; and without unduly lengthening this opinion by detailing their testimony, let it suffice for us to say that the effect of it was to deny categorically Miss Graham's testimony. The foreman testified that each time any of these foreign matters came up he stopped the discussion and admonished the other jurors that those were not matters to be discussed or considered by them, but that they were to be governed by the court's instructions contained in the charge. The trial court had a right to believe this testimony and, so believing, to conclude that no misconduct occurred requiring a reversal. Walker v. Thompson, Tex.Civ.App., 287 S.W.2d 556, wr. ref. n. r. e.; St. Paul-Mercury Indemnity Co. v. Bearfield, Tex.Civ.App., 296 S.W.2d 956, wr. ref. n. r. e.

In a situation like this, the general rule is that a conflict in testimony is to be resolved by the trier of the facts; in other words, it was for the trial judge to weigh the conflicting testimony and determine whether or not there was any jury misconduct. He heard the jurors testify and was in much better position to resolve the conflicts than are we. Under these circumstances the decision of the trial court that jury misconduct did not occur is final and binding on us. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, and Brawley v. Bowen, Tex.Sup.1965, 387 S.W.2d 383. Appellants' fourth point is overruled.

Because of the error of the trial court in refusing to submit to the jury a special issue inquiring as to whether Mrs. Brooks sustained bodily injuries, we reverse the judgment appealed from and remand it for another trial.

Reversed and remanded.