Hugh A. **ENGLISH, Sr.,** Appellant,

v.

**AMERICAN & FOREIGN INSURANCE COMPANY,** Appellee.

No. 8319.

Court of Civil Appeals of Texas, Texarkana.

Oct. 28, 1975.

Rehearing Denied Dec. 2, 1975.

R. L. Middleton, Jr., Dallas, for appellant.

John H. Martin, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

CORNELIUS, Justice.

In this workmen's compensation case the jury found that plaintiff Hugh A. English was disabled by osteo-arthritis incurred as a result of his employment. The jury also found such disability had its beginning on May 23, 1971. Since it was undisputed that plaintiff did not give his employer notice of his condition until May of 1972 or file his claim for compensation until November of 1972, the trial court denied recovery.[1] There was no claim of good cause for failure to timely give notice or file the claim for compensation. Instead, plaintiff contended that the first distinct manifestation of his condition was not until May of 1973, when he underwent surgery for the condition, and that consequently his notice and claim were timely. The appeal contends that (1) the trial court erred in refusing to allow plaintiff to testify to the time when he first believed his condition "to be serious", (2) the jury was guilty of misconduct in taking notes of the testimony and using them in its deliberations, and (3) the jury's finding that the condition began on May 23, 1971, was against the great weight and preponderance of the evidence.

Plaintiff worked for Dallas Federal Savings and Loan Association as a painter and paper hanger from April of 1965 until May of 1972. He began to have trouble with his neck as early as April of 1971 and was hospitalized for the condition on May 23, 1971 when he was treated by Dr. Kirksey. After four days hospitalization, plaintiff went back to work but was again hospitalized in December of 1971. He again returned to work but continued to have trouble with his neck until May of 1972 when he was hospitalized again and surgery was performed. Although plaintiff admitted that

Dr. Kirksey told him he had osteo-arthritis in May of 1971 when he was first hospitalized, and that by October or November of 1971 his neck was almost completely immobile, and that he then knew he had osteo-arthritis due to the nature of his work over the years, he testified he never felt anything was wrong with his neck, other than usual soreness which was to be expected in his type of work, until May of 1972 when a myelogram revealed the condition. Plaintiff's doctor testified that the nerve root irritation which necessitated surgery did not manifest itself until May of 1972, and could well have been triggered by trauma occurring between plaintiff's examination in January of 1972 and May of that year.

■ The first point of error, which complains of the trial court's refusal to allow plaintiff at one point in the trial to testify to the time when he first believed his condition was serious, is overruled. Plaintiff was not harmed by that action because he later was allowed to testify that it was not until the myelogram was taken in May of 1972 that he felt there was anything wrong with his neck other than the usual soreness which was to be expected in his kind of work.

■ The second point of error asserts that a new trial should have been granted because of the misconduct of the jury in using notes during their deliberations. A new trial on grounds of jury misconduct will be granted only when (1) the misconduct is proved, (2) the misconduct is material, and (3) the misconduct probably resulted in injury to the complaining party. Rule 327, Tex.R.Civ.P.; *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (1943). Whether the acts alleged to be misconduct actually occurred is a question of fact, and if the evidence is conflicting, the express or implied finding of the trial court on that question is ordinarily taken as final. *Bar-*

---

1. Defendant also asserts that osteo-arthritis was not compensable as an occupational disease until the amendment of Art. 8306, Sec. 20, Tex.Rev.Civ.Stat.Ann. effective August 30, 1971, which was subsequent to the beginning of plaintiff's condition.

*rington v. Duncan,* supra; *Willrodt v. Union City Transfer,* 258 S.W.2d 443 (Tex.Civ. App. Fort Worth 1953, writ ref'd, n. r. e.). But when the occurrence of the conduct is undisputed, the questions of whether it constituted misconduct and if so, whether such misconduct was material and probably resulted in injury to the complaining party are questions of law to be determined from the record as a whole. *Texas Employers' Insurance Association v. Waldon,* 392 S.W.2d 509 (Tex.Civ.App. Tyler 1965, writ ref'd, n. r. e.); *Amerine v. Hunter,* 335 S.W.2d 643 (Tex.Civ.App. Austin 1960, writ ref'd, n. r. e.); *Barrington v. Duncan,* supra; Tex.R.Civ.P. 327. The party moving for a new trial has the burden to prove not only that the misconduct occurred, but that it was material and probably resulted in injury. *St. Louis Southwestern Railway Company v. Gregory,* 387 S.W.2d 27 (Tex. 1965); *City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259 (1944); *Barrington v. Duncan,* supra.

Affidavits attached to the motion for new trial and evidence produced at the hearing of the motion showed that two jurors took notes during the trial. The notes contained various dates referred to in the testimony, and were read to the other jurors or referred to during the deliberations on the issue of the beginning date of plaintiff's condition.

Tex.R.Civ.P. 281 prescribes the material which may be taken into the jury room during deliberations. The rule does not mention notes made by the jurors but it does prohibit the use of depositions during the deliberations, and Rule 287 provides an exclusive method of making a witness's testimony available to the jurors in case they disagree in their recollection of such testimony. Since there is no danger that either depositions received in evidence or reporter's transcripts of portions of the testimony would be inaccurate or would inject new and unsworn testimony into the case, it appears that the purpose of the prohibitions against the jury's use of such material is to avoid undue emphasis of isolated portions of the testimony. If that be the purpose, the reasons underlying it would apply with even greater force to the jury's use of a memorandum made by one of its members, for such a memorandum would not only serve to emphasize selected portions of the testimony but would also be subject to possible inaccuracies resulting either from honest mistake or corrupt purpose. There is a wide difference of opinion among the authorities as to the propriety of the use of a juror's notes. See 14 A.L.R.3d 831. The few Texas cases which have considered the problem have not definitely answered the question, but have found the practice harmless when the notes pertained to undisputed issues or where the notes were not held out to the other jurors as evidence. See *Manges v. Willoughby,* 505 S.W.2d 379 (Tex.Civ. App. San Antonio 1974, writ ref'd, n. r. e.); *Guest v. American Petrofina Company of Texas,* 485 S.W.2d 926 (Tex.Civ.App. Texarkana 1972, no writ); *Brooks v. Temple Lumber Company,* 105 S.W.2d 386 (Tex.Civ. App. Beaumont 1937, no writ). But the use of a juror's written notes as evidence or as authority on their face as being a true representation of a portion of the testimony in order to persuade the other jurors as to a disputed issue would seem to violate the spirit, if not the letter, of Rules 281 and 287. Nevertheless, the record fails to show that the use of the notes in this case resulted in probable injury. The testimony at the hearing of the motion for new trial revealed that the notes were read or referred to only to determine the exact date of plaintiff's hospitalizations. Those dates were undisputed. It was stipulated that plaintiff was first hospitalized on May 23, 1971. Apparently, the jury felt that the time of plaintiff's first hospitalization was the beginning or first manifestation of his condition, and they merely used the notes to determine the specific date of such hospitalization. As that date was undisputed, the use of the notes for that purpose could not have harmed the plaintiff.

A careful review of the testimony, some of which is summarized earlier, re-

**814**

veals ample evidence from which the jury could have concluded that plaintiff's condition had its first distinct manifestation on May 23, 1971 when he was first hospitalized. Point of error No. 3 complaining that such finding is against the great weight and preponderance of the evidence is therefore overruled.

The judgment of the trial court is affirmed.