S. C. BYARS et ux., and Vernice Wilkerson et ux., Appellants,

v.

T. L. RICHARDSON et ux., Appellees.

No. 6875.

Court of Civil Appeals of Texas.

Beaumont.

June 29, 1967.

R. W. Fairchild, Nacogdoches, for appellants.

Perkins & Perkins, Lufkin, for appellees.

PARKER, Justice.

S. C. Byars, et ux, and Vernice Wilkerson, et ux, sued T. L. Richardson, et ux, in the district court of Angelina County, Texas, for damages arising out of an automobile collision. which occurred November 27, 1964. The jury found it was an unavoidable accident and defendants were not negligent on the six theories of primary negligence submitted to it. On the Jury verdict, judgment was rendered that the plaintiffs take nothing. The parties will be designated as in the trial court.

The answers of the jury to the numbered special issues are as follows:

1. Mrs. T. L. Richardson did not fail to keep a proper lookout.

3. Mrs. T. L. Richardson did not fail to make such an application of her brakes as would have been made by a person of ordinary prudence under the same or similar circumstances.

5. In attempting to pass the automobile of Vernice Wilkerson, Mrs. T. L. Richardson was not negligent.

7. Mrs. T. L. Richardson was not driving at a greater rate of speed than a person of ordinary prudence would have driven under the same or similar circumstances.

9. Mrs. T. L. Richardson did not turn her automobile to the right immediately before striking plaintiffs' automobile.

12. Mrs. T. L. Richardson was operating her car without the use of headlights.

13. Operating the car without headlights was not negligence.

15. It was an unavoidable accident.

16. The damages to Mrs. Belle Byars was in dollars and cents "nothing".

17. Reasonable and necessary medical expenses and doctor's care and attention furnished to Mrs. Bell Byars to the time of trial would be fairly and reasonably compensated by the sum of $500.00.

18. $7,400.00 would fairly and reasonably compensate Mrs. Belle Byars for the reasonable and necessary medical expenses and doctor's care and attention which she will in reasonable probability require in the future in connection with the treatment of the injuries sustained by her in the collision.

19. The sum of money which would fairly and reasonably compensate Mrs. Vernice Wilkerson for her damages directly and proximately caused by the injuries sustained by her in dollars and cents is "nothing".

20. $25.00 would fairly and reasonably compensate Mrs. Vernice Wilkerson for the reasonable and necessary medical expenses and doctor's care and attention furnished to the time of trial in connection with the treatment of her injuries.

21. No dollars and cents would fairly and reasonably compensate Mrs. Vernice Wilkerson for the reasonable and necessary expenses and doctor's care and attention which she will in reasonably probability require in the future in connection with the treatment of her injuries.

Plaintiffs contend in their points of error 1 and 2 the trial court erred in overruling their motion for new trial because the answers of the jury to special issues Nos. 7 and 15 are each so contrary to the great weight and preponderance of the evidence that they are clearly wrong and manifestly unjust. In considering these two points of error all the evidence and record will be considered by this court.

This collision occurred about 5:00 p. m. on a rainy day on the highway between Lufkin and Wells, Texas. The four plaintiffs were in a Ford operated by Mr. Vernice Wilkerson. For a period of time prior to the collision, plaintiffs' vehicle was followed by a cookie truck which was followed by the Ford operated by Mrs. T. L. Richardson. Two daughters of Mrs. Richardson were in the car with her. The daughters did not testify upon the trial. The older daughter lived in Irving, Texas. The younger, 14 years old at time of trial, lives with her mother.

Vernice Wilkerson testified:

(1) That the rain was intermittent, that is, it would rain real hard then slack up. It was raining very hard with lightning just prior to and at the time of the collision.

(2) That there was not much traffic.

(3) That his speed shortly before the accident was 35, maybe 40, miles per hour, had glanced at his speedometer.

(4) He was just driving along when suddenly his car was hit and knocked about two carlengths off the road.

(5) He heard Mrs. Richardson tell the Highway Patrolman she was driving 65 miles per hour.

Mrs. T. L. Richardson testified:

(1) That she was familiar with the highway where the collision occurred, having traveled it frequently.

(2) That it was raining but not very hard and, at the time of the collision, the rain "* * * had slacked up. * * *"

(3) That she followed the plaintiff for some time going perhaps 40 miles per hour and never over 45 miles per hour.

(4) That she was going, she imagines, around 45 miles per hour as she started around the plaintiffs' vehicle.

The cookie truck traveling in the same direction as the other two cars pulled off the highway onto the shoulder at the crest of a hill. It was then that Mrs. Richardson saw the Wilkerson vehicle for the first time. It was then about four carlengths or more ahead of her in its proper lane traveling in the same direction she was. Its speed was about 40 miles per hour; that it was raining, but not very hard, and at the time of the collision the rain had slacked up. She had her parking lights on but not her headlights. She followed the plaintiffs' automobile for some time going perhaps 40 miles per hour. She pulled up closer to the Wilkerson car and followed it until the "no passing" marks had been passed and she could see the way was clear, then going down the hill she accelerated her car to about 45 miles per hour. She turned to the left to go around the plaintiffs' vehicle when about one and a half carlengths behind it. Immediately, her vehicle went into a spin. She did the best she could "to wrestle it down", but did not apply her brakes. In the spin the front bumper on the right side of her car struck the Wilkerson car about the driver's door. At no time was she traveling in excess of 45 miles per hour; never at anytime on the trip to Wells did she drive 65 miles per hour. She didn't think she ever drove 60 miles per hour. When she pulled out to pass the Wilkerson car, its rear end was about one and a half carlengths from the front of her car. She estimated she spun around at least twice before she finally regained control and pulled, over to her right side of the road to the shoulder. The Wilkerson car was behind her with its front wheels on the shoulder and its rear wheels in the mud. The Wilkerson vehicle did nothing to cause the collision. She talked to the Highway Patrolman at the scene.

James Southard, the Highway Patrolman, testified:

(1) That he did not determine whose fault the accident was as this was not his job.

(2) That his opinion as to what would be a safe speed was based on the assumption that it was raining heavily at the time of the collision.

(3) That the rain could have slacked off at the time of the collision.

(4) That the speed limit during the day time on this stretch of highway was 70 miles per hour.

(5) That this accident occurred in the afternoon.

He also testified the accident happened about 5:00 p. m. He got to the scene about 5:30 p. m. He talked with Mrs. Richardson and Mr. Wilkerson at the scene. Both of them told him it was raining heavily at the time of the collision. Mrs. Richardson said that as she was headed north she attempted to pass, lost control of her car and spinning came back into the east lane and hit Wilkerson's car on its left side. Made up his original notes at the scene, then from those notes made his report to Austin. On his report, he had 65 miles per hour as Mrs. Richardson's speed and assumes she told him that, as that is where he got that information. He has Wilkerson's speed at 40 miles per hour. Believes he got the speed of Mrs. Richardson's car from Mrs. Richardson, but isn't sure. Could have got it from someone else. Doesn't now remember her telling him she was going 65—she may not have told him anything. He talked to the driver of the cookie truck, who was an eye witness, who told him how the accident happened and of the speed of Mrs. Richardson's car. From what he and Mrs. Richardson told him, placed her speed at 65 miles per hour.

(At this point the trial court, on objection, instructed the jury not to consider any of Southard's testimony as to the speed of Mrs. Richardson's car. The court then re-

cessed for 15 minutes. After the recess, Southard testified further, as follows:)

There was no reason for him to estimate speed in this collision because it was in line with what the drivers told him. Believes Mrs. Richardson told him of her speed; Mr. Wilkerson was present when she did. She said she was traveling 65 miles per hour, and on the basis of that statement by her he made his report of her speed. Nothing happened at the recess to refresh his memory. He just thought about it and remembered that Mrs. Richardson did tell him she was traveling 65 miles per hour. He is sure that she did. There was no difference between what Mrs. Richardson and the cookie truck driver told him of Mrs. Richardson's speed. Mrs. Richardson told him her car spun around two or three times before it hit the other car. In his opinion, the maximum safe speed on the highway at the point and time involved would have been 40 to 50 miles per hour.

The driver of the cookie truck did not testify. No explanation is given as to why he was not a witness.

Points of error 1 and 2 are overruled.

■ Plaintiffs conterd:

"The trial court committed material and prejudicial error in failing and refusing to grant plaintiffs' motion to excuse from the jury panel the juror Glenda Dupree because the voir dire examination of such juror revealed that she was not a freeholder in the state or a householder in the county or the wife of a householder in the county and she was therefore not a qualified juror."

The court reporter took down the voir dire examination of the jury panel in this case. No challenge was made of the qualifications of the juror Glenda Dupree. Challenges were made as to the qualifications of other jurors. Upon the motion for new trial the only testimony in the record as to the plaintiffs' challenge of the juror Glenda Dupree are statements made by one of plaintiffs' counsel to the effect that to the best of his knowledge he brought this to the attention of the court, some statement was said or something that the court was satisfied, and to the best of his knowledge he did except to the court's ruling but he didn't believe he did this in open court. The trial judge overruled the motion for new trial after a full hearing. In the face of the trial court's implied finding that either Glenda Dupree was qualified as a juror or that there was no proper challenge made to her as being a qualified juror, or both, this third point of error of plaintiffs is overruled. Tumlinson v. San Antonio Brewing Ass'n, 170 S.W.2d 620 (Tex.Civ.App., ref'd, no merit).

■ We now consider plaintiffs' points of error dealing with jury misconduct. Plaintiffs contend there was jury misconduct in three points of error:

4. The trial court committed material and prejudicial error in overruling plaintiffs' amended motion for a new trial because during the deliberations of the jury some of the jurors stated to the other members of the jury in substance that the defendants were not protected by liability insurance and would have to pay the damages found by the jury.

5. The trial court committed material and prejudicial error in overruling plaintiffs' amended motion for a new trial because during the deliberations of the jury some of the jurors stated to the other members of the jury in substance that in their own personal experiences if the road was slick an automobile would be liable to go into a spin at either a slow or a fast speed upon a proper and normal application of the brakes.

6. The trial court committed material and prejudicial error in overruling plaintiffs' amended motion for a new trial because several of the jurors were prejudiced and stated during the deliberations of the jury that they did not believe in

anyone bringing a suit against another for money damages.

At the hearing on the motion for new trial some of the jurors testified: They first selected a foreman in the person of Mr. Coleman; the charge of the court was read; beginning with special issue 1, the special issues were answered in order unless they could not agree upon a particular issue, in which event they skipped over this issue and moved to the next. They agreed upon and answered the issues numbered below when first considered in order, to-wit: Nos. 1, 5, 9, 12, 13 and 15. Some of the jurors discussed their experiences in driving automobiles upon slippery or slick streets or highways. There was a discussion as to whether an automobile would be prone to go into a spin on such a road at either a slow or a fast speed upon a proper and normal application of the brakes. The undisputed evidence in this case is that Mrs. Richardson did not try to put on her brakes while in the spin. At first the jurors disagreed as to whether a car would go into a tailspin on a slippery road when the brakes were applied, whether the car was going at a slow or a fast rate of speed. Passing this issue, they returned to it and agreed that Mrs. Richardson did not fail to make such an application of her brakes as would have been made by a person of ordinary prudence under the same or similar circumstances. It is undisputed the car was spinning without brakes having been applied. Jurors have a right to use their common knowledge and experience in life in weighing the evidence before them. The evidence on the hearing on motion for new trial was they made general reference to topics of common knowledge as to the proper way to drive an automobile on a slippery road and whether or not to use the brakes in a spin. No individual juror testifying could remember any individual juror relating any particular personal experience. None of the jurors had any special knowledge on the subject of driving an automobile under such circumstances. The statements made by the jurors amounted to nothing more than a layman's discussion of the weight to be given to the evidence before the jury. Point of error 5 is overruled. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 63–64 (1945).

Some comment was made by some juror that some persons not named sued for money on claims where they were not entitled to anything. There is nothing in this record to show that any juror was prejudiced against returning a verdict for plaintiffs nor is there any evidence as to which juror made the above statement. There is no testimony showing that such a statement influenced any answer to any issue. Plaintiffs had the burden of proving that misconduct did occur and that such conduct resulted in injury to plaintiffs. This burden plaintiffs have failed to discharge. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943). Point of error 6 is overruled.

After special issues 1, 5, 9, 12, 13 and 15 were answered, some of the jurors wondered if the defendants had liability insurance. No juror could recall any evidence as to liability insurance. The juror Terral "believed" some unidentified juror thought since it was not mentioned, the defendants did not carry insurance. The statement was made that if they did not have such insurance, how would you like to have "* * * your wife have a wreck and you had to foot the bill or something like that." Mr. Terral didn't remember what the statement was. The juror Glenda Dupree didn't hear it. She testified that probably everyone was talking at once, there was quite a discussion of damages, as that was the only issue that they really debated. In these discussions the foreman of the jury admonished it to answer the questions as they were told to answer them. The juror Terral also admonished the jury and said: "* * * we would have to stay with the evidence we heard there and not what we think. * * *" Everyone verbally agreed with him and no one questioned his position in that respect.

The discussion of liability insurance appears to have been casual, somewhat conflicting and ·· bulous. To mention insurance was improper. Under Texas Rules of Civil Procedure 327, this court must decide whether this error is of such a nature as to require a reversal of the judgment of the trial court. Viewing the entire record, including the evidence on the main trial, the evidence on the motion presenting misconduct showing the order in which the special issues were answered on negligence and unavoidable accident, it does not reasonably appear that injury probably resulted to the plaintiffs. Point of error No. 4 is overruled. Rules 327, 434, T.R.C.P.; Barrington v. Duncan, supra; Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962; Lands v. York Oil Corp., 280 S.W.2d 628 (Tex.Civ. App.1955, n. r. e.).

Judgment of the trial court affirmed.